David J. PAHUTA, Jr., Plaintiff–Appellee,

v.

MASSEY–FERGUSON, INC., Defendant–Third–Party–Plaintiff–Counter–Defendant–Appellant,

Keeler Construction Company, Inc., Third–Party–Defendant–Counter–Claimant.

No. 97–9597.

United States Court of Appeals, Second Circuit.

Argued Aug. 24, 1998.

Decided March 1, 1999.

Amended March 29, 1999.

Lawrence A. Schulz, Orchard Park, N.Y. (Brown and Mohun, Depew, N.Y.), for Appellee.

Anthony J. Colucci, III (Debra A. Norton, Block & Colucci, P.C., Buffalo, N.Y.), for Appellant.

Before: MESKILL, WALKER, and SACK, Circuit Judges.

SACK, Circuit Judge:

Defendant–Appellant Massey–Ferguson, Inc., appeals from a judgment entered by Magistrate Judge Heckman [1] following a jury verdict in favor of plaintiff-appellee David J. Pahuta, Jr. on claims of product defect. Massey–Ferguson argues that the district court erred when it: (1) denied Massey–Ferguson's motion for summary judgment on the product defect claims; (2) denied Massey–Ferguson's Federal Rule of Civil Procedure 50(a) motion, made at the end of the plaintiff's case, for judgment as a matter of law; and (3) denied Massey–Ferguson's request to charge the jury on New York law concerning optional safety equipment. We decline to review the sufficiency of the evidence at trial, as to which necessary trial and post-trial motions were not made. We also decline to review the denial of the motion for summary judgment. We vacate the final judgment, however, and remand the case for

---

1. The parties consented to having Magistrate Judge Heckman conduct all proceedings in this case, including the entry of final judgment, in accordance with 28 U.S.C. § 636(c).

a new trial because of the district court's refusal to instruct the jury as to New York law relating to defects in products sold without optional safety equipment.

## BACKGROUND

On April 20, 1990, Pahuta, an employee of Keeler Construction Company, Inc., in Albion, New York, was operating a Massey–Ferguson hydraulic tractor loader in order to load steel drainage pipes into a dump truck. The tractor loader was a multi-use tractor combined with a hydraulic loader to which one of several pieces of equipment, such as a bucket loader, a backhoe, a crane, or fork tines, could be attached. On the day in question, the tractor loader was equipped with fork tines.

While Pahuta was lifting the pipes some 13 or 14 feet above the ground in order to drop them into the truck, the left front tire of the tractor loader bumped into the right rear tire of the dump truck. The rubber against rubber contact had a spring effect that caused one of the pipes to roll backwards down the fork arms attached to the tractor loader. The pipe rolled over the cradle of the fork arms and struck Pahuta, who had ducked his head, with a blow to his back. He was permanently paralyzed from the waist down.

Pahuta filed this action in Supreme Court, Erie County, against Massey–Ferguson alleging claims sounding in negligence, strict liability and breach of warranty in an attempt to recover for his injuries. The suit was timely removed to the United States District Court for the Western District of New York on the basis of diversity of citizenship. Pahuta's principal claim is that if Massey–Ferguson had equipped the otherwise unenclosed cab area of the tractor loader with an overhead guard, either in the form of a four-post overhead safety frame, a rollbar or another kind of roll over protection structure, the steel pipe would have hit the guard instead of Pahuta. Pahuta also argues that the accident could have been avoided entirely if the hydraulic loader had been equipped with a self-leveling device.

Massey–Ferguson agrees that Pahuta's injuries would have been avoided had the trac-

tor loader been equipped with either piece of safety equipment, but argues that under New York law it should not be held liable because in 1970, at the time of its sale, it had made overhead guards and self-levelers available to purchasers of the tractor loader as optional equipment. Massey–Ferguson contends that liability, if any, should rest with Pahuta's employer, Keeler Construction Co., the purchaser of the tractor loader, since Keeler chose to equip it with a fork attachment but without any of the optional safety equipment at issue. Although Massey–Ferguson commenced a third-party suit against Keeler, that suit was discontinued without prejudice before Pahuta's claims went to trial. Much of the factual dispute between the remaining parties centered on whether overhead guards and self-levelers should have been included as standard equipment rather than offered as options and whether any safety equipment suitable for the tractor loader was actually available when Keeler purchased its tractor loader in April 1970.

After the close of discovery, Massey–Ferguson moved for summary judgment. Magistrate Judge Heckman granted the motion on the breach of warranty claim—a decision not challenged on appeal—but denied summary judgment on both of the product defect claims. *See Pahuta v. Massey–Ferguson, Inc.,* 942 F.Supp. 161 (W.D.N.Y.1996).

After Pahuta presented his case at trial, Massey–Ferguson again moved for dismissal of the product defect claims, this time by means of a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). Magistrate Judge Heckman denied Massey–Ferguson's motion. Inexplicably, Massey–Ferguson did not renew the motion at the close of all the evidence or after the entry of judgment under Rule 50(b), nor did it make a motion for a new trial under Rule 59.

Massey–Ferguson did, however, strenuously object to Magistrate Judge Heckman's instructions to the jury. The defendant contended throughout the trial, as it had argued in its motions for summary judgment and judgment as a matter of law, that under New York law a manufacturer cannot be held liable if an injury is caused by the failure of

the buyer of a multi-use product to purchase available optional safety equipment of which the buyer was aware. The charge ultimately given to the jury did not include any instruction directly addressing this issue.

The jury rendered a verdict for Pahuta on the special verdict form submitted to it, and Magistrate Judge Heckman entered a final judgment in his favor in an amount exceeding $2 million. Massey–Ferguson appeals.

## DISCUSSION

### I. Motion for Judgment as a Matter of Law

Massey–Ferguson appeals the district court's denial of its motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) made at the close of plaintiff's case on his design defect and failure to warn claims. The ground for the motion, as required by the rule, was that there was "no legally sufficient evidentiary basis for a reasonable jury to find for" Pahuta on those claims. Fed.R.Civ.P. 50(a). Massey–Ferguson did not, however, comply with Rule 50(b), which requires that when a Rule 50(a) motion made during trial is not granted, the moving party must renew the motion both at the close of the evidence and within ten days after entry of judgment. See Fed.R.Civ.P. 50(b); 9A Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure*, §§ 2536, 2537 (2d ed.1995).

In the absence of a Rule 50(b) renewed motion or extraordinary circumstances, an "appellate court [i]s without power to direct the District Court to enter judgment contrary to the one it had permitted to stand." *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 218, 67 S.Ct. 752, 91 L.Ed. 849 (1947); *Gierlinger v. Gleason*, 160 F.3d 858, 869 (2d Cir.1998); *Varda, Inc. v. Insurance Co. of North America*, 45 F.3d 634, 638 (2d Cir.1995); *Hilord Chem. Corp. v. Ricoh Elecs., Inc.*, 875 F.2d 32, 37 (2d Cir.1989) ("with rare exception"). The purpose of requiring a renewed motion for judgment as a matter of law is to give the opposing party " 'an opportunity to cure the defects in proof that might otherwise preclude him [or her] from taking the case to

the jury.' " *Cruz v. Local Union Number 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir.1994) (quoting *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir.1986)) (alteration in original).

Failure to comply with Rule 50(b) may be excused only when the district court has indicated that the motion need not be renewed, and the party opposing the motion could not reasonably have thought "that the movant's 'initial view of the insufficiency of the evidence had been overcome and there was no need to produce anything more in order to avoid the risk of [such] judgment.' " *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir.1987) (quoting *Ebker v. Tan Jay Int'l, Ltd.*, 739 F.2d 812, 824 (2d Cir.1984)). The district court made no such indication here. Massey–Ferguson therefore procedurally defaulted when it twice, at the close of the evidence and after entry of judgment, failed to renew its Rule 50(a) motion.

We may overlook such a default in order to " 'prevent a manifest injustice' in cases '[w]here a jury's verdict is wholly without legal support.' " *Varda*, 45 F.3d at 638 (quoting *Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54 (2d Cir.1978) (per curiam)); *accord Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 164 (2d Cir.1998); *Anderson v. Branen*, 27 F.3d 29, 30 (2d Cir.1994)(citing *United States v. Quiroz*, 22 F.3d 489, 490 (2d Cir. 1994)). There is no claim or basis for a claim of such manifest injustice here. We therefore affirm the district court's rejection of the motion for judgment as a matter of law made at the close of the plaintiff's case.

### II. Motion for Summary Judgment

Massey–Ferguson argues that the judgment below should be vacated because, prior to trial, Magistrate Judge Heckman improperly denied its motion for summary judgment on the product defect claims. See *Pahuta*, 942 F.Supp. at 166–67. Although judgment against a party upon trial frequently follows denial of that party's pre-trial motion for summary judgment, it would appear that this circuit has yet to address explicitly

whether it will hear a post-trial appeal of that denial.

 Based on our review of the case law in this circuit, the Federal Rules of Civil Procedure, the reasoning of other circuits, and principles of judicial economy, we now join the rising chorus of circuits that have concluded that such an appeal will not ordinarily lie.[2] "[T]he question of whether a party has met its burden must be answered with reference to the evidence and the record as a whole rather than by looking to the pretrial submissions alone. The district court's judgment on the verdict after a full trial on the merits thus supersedes the earlier summary judgment proceedings." *Metropolitan Life Ins. Co. v. Golden Triangle*, 121 F.3d 351, 354 (8th Cir.1997) (citation omitted).[3]

The reasons are manifold.

 Massey–Ferguson's "attack on the denial of summary judgment has been overtaken by subsequent events, namely, a full-dress trial and an adverse jury verdict." *Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994). It is axiomatic that the purpose of summary judgment is to prevent trials that are unnecessary because of an absence of material issues of fact for the jury to decide. *See, e.g., Vermont Structural Slate Co. v.* *Tatko Bros. Slate Co.*, 233 F.2d 9, 10 (2d Cir.1956). "Once trial began, the summary judgment motion[ ] effectively became moot." *Black v. J.I. Case Co.*, 22 F.3d 568, 571 (5th Cir.), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994). It could no longer spare either party the unnecessary burden of trial.

Evidence adduced at trial typically is different from that offered at the summary judgment stage. When a plaintiff defeats a defendant's motion for summary judgment, he may and ordinarily does nevertheless augment his evidence when it comes time to present his case to the jury. *See, e.g., Varda*, 45 F.3d at 639 (the plaintiff "heeded the court's admonition" at the time of defendant's summary judgment motion as to the weakness of its claim "and did produce additional evidence at trial"). Post-trial reversal would be a commentary on the skill of counsel in marshaling evidence for a pre-trial motion rather than a determination of the quality of his or her client's case and the appropriateness of a trial on the merits. "It makes no sense . . . to reverse a judgment on the verdict where the trial evidence was sufficient merely because at summary judgment it was not." *Black*, 22 F.3d at 572.

2. *See Lama v. Borras*, 16 F.3d 473, 476 n. 5 (1st Cir.1994); *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir.1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 570–71 (5th Cir.), *cert. denied*, 513 U.S. 1017, 115 S.Ct. 579, 130 L.Ed.2d 494 (1994); *Jarrett v. Epperly*, 896 F.2d 1013, 1016 (6th Cir.1990); *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir.1994); *Metropolitan Life Ins. Co. v. Golden Triangle*, 121 F.3d 351, 354 (8th Cir.1997); *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1358–59 (9th Cir.1987); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1250–51 (10th Cir.1992), *cert. denied*, 507 U.S. 973, 113 S.Ct. 1417, 122 L.Ed.2d 787 (1993); *Glaros v. H.H. Robertson Co.*, 797 F.2d 1564, 1569 (Fed.Cir.1986), *cert. dismissed*, 479 U.S. 1072, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987).

3. One prominent treatise reports that we adhere to the contrary rule. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2715 n. 26 (3d ed.1998) (citing *Savarin Corp. v. National Bank of Pakistan*, 447 F.2d 727 (2d Cir.1971)). In *Savarin* we affirmed in part and reversed in part a judgment for the plaintiff on a jury verdict that followed the court's denial of the defendant's motion for summary judgment. We then said, without discussion, "The motion for summary judgment was properly denied," and affirmed the denial. 447 F.2d at 732. We do not regard this as holding that we will reverse denial of a summary judgment motion upon separate review of the summary judgment record despite an intervening jury verdict for the winner of the motion. Similarly, our holding today is not foreclosed by *Machleder v. Diaz*, 801 F.2d 46, 58 (2d Cir.1986) *cert. denied*, 479 U.S. 1088, 107 S.Ct. 1294, 94 L.Ed.2d 150 (1987), where, in reversing a judgment on a jury verdict, the Court held that appellant's motions for summary judgment and a directed verdict *and* a Rule 50(b) motion were erroneously denied, but did not rule on the propriety of the appeal of the summary judgment motion's denial. Compare *Chesapeake Paper Prods. Co.*, 51 F.3d at 1234–35, where the Fourth Circuit discussed its previous decisions in which it had affirmed or reversed denials of summary judgment motions, and concluded that they did not require post-trial review of denials because the court had never specifically addressed the issue of appealability.

Indeed, the trial court's ruling on the Rule 50 motion, which stands on this appeal, confirms that the burden of trial was *not* unnecessary and thereby validates the court's denial of the motion for summary judgment. In denying the Rule 50 motion, the court held that there was, at trial, enough evidence for Pahuta to succeed before a jury. Therefore, *a fortiori*, there was a material issue of fact for the jury to have decided, which is the sole import of the denial of the motion for summary judgment. The district court may have been wrong in denying Massey–Ferguson's Rule 50(a) motion, of course, but the cure would have been renewal of the motion for judgment under Rule 50(b) and review of that ruling on appeal—not an appeal of the prior ruling on the motion for summary judgment. *See Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1251 (10th Cir.1992).

Inasmuch as a party is not permitted to appeal an issue that was not properly raised before the district court at trial in a motion for judgment as a matter of law, "it would be odd indeed for us to consider whether summary judgment was properly denied in a case where the identical issue was presented at trial and the requisite motions for judgment as a matter of law were not made." *Watson*, 29 F.3d at 279; *see also Black*, 22 F.3d at 571–72. But this is just what Massey–Ferguson asks us to do. We will not hear in the guise of an appeal of Massey–Ferguson's defeat on its motion for summary judgment an appeal of its defaulted motion under Rule 50(a).

Considerations of judicial economy also militate against hearing post-trial appeals from lost motions for summary judgment. "[S]ummary judgment was not intended to be a bomb planted within the litigation at its early stages and exploded on appeal." *Whalen*, 974 F.2d at 1251 (quoting *Holley v. Northrop Worldwide Aircraft Serv., Inc.*, 835 F.2d 1375, 1377 (11th Cir.1988)). If we were routinely to hear post-trial appeals of summary judgment motion denials, we would provide an unwarranted incentive for trial judges to grant such motions in close cases. The only way for a district court to defuse the "bomb" of a denial's reversal following what would be a therefore superfluous trial would be to grant the motion, enter an appealable judgment dismissing the complaint, and await the outcome of the appeal. Then, only in the event of reversal, would the court and parties proceed to trial secure in the knowledge that one is necessary. The upshot would be more frequent summary judgments and a resulting proliferation of the piecemeal appeals that federal practice is designed to avoid. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

By entertaining such post-trial appeals, moreover, we would be agreeing to Massey–Ferguson's request that we make a simultaneous determination on appeal of the same issue, sufficiency of the evidence, twice—once based on the trial record and once on the record on the motion for summary judgment. We decline thus to make appeals in civil cases more complex than they already are.

■ Our conclusion is consistent with, if not required by, our case law. Orders denying summary judgment are interlocutory in nature. Because they are not "final," they are not ordinarily appealable. 28 U.S.C. § 1291; *see United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road*, 916 F.2d 808, 811 (2d Cir.1990), *cert. denied*, 498 U.S. 1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991); *Clark v. Kraftco Corp.*, 447 F.2d 933, 934 (2d Cir.1971); *see also Firestone Tire & Rubber Co.*, 449 U.S. at 373–74, 101 S.Ct. 669.[4] True, we have held

---

4. There are exceptions to the rule of nonappealability. "A district court's denial of a defendant's motion for summary judgment", for example, "is an immediately appealable collateral order when (1) the defendant was a public official asserting a defense of 'qualified immunity,' and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." *Lee v. Sandberg*, 136 F.3d 94, 101 (2d Cir.1997) (citations and internal quotation marks omitted). Qualified immunity "is an immunity from suit rather than a mere defense to liability; and ... it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). An order denying summary judgment as to qualified immunity is therefore "final" for purposes of 28 U.S.C. § 1291, *id.* at 524–30, 105 S.Ct. 2806, and appealable. The order denying summary judgment

that summary judgment denials can be appealed once final judgment is entered if there has been no intervening trial on the merits. In *228 Acres of Land*, 916 F.2d at 811, for example, appellant decided, after he lost his motion for summary judgment, that there was "no need to require a trial on the merits." An appeal was therefore proper. *Id.* It is the absence of the trial, its record, and the motions brought during trial and their resolution, that makes that case entirely distinguishable from this one.

If a party wishes to appeal a denial of a motion for summary judgment, (1) the party may petition for the right to file an interlocutory appeal pursuant to 28 U.S.C. § 1292(b); or (2) if the case proceeds to trial, the party may file a motion (and renewed motions) pursuant to Rule 50 for judgment as a matter of law and appeal the district court's denial of that motion. Massey–Ferguson did neither. It cannot instead simply appeal denial of its motion for summary judgment.

> To be sure, the party moving for summary judgment suffers an injustice if his motion is improperly denied. This is true even if the jury decides in his favor. The injustice arguably is greater when the verdict goes against him. However, we believe it would be even more unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial.

*Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1359 (9th Cir.1987).

We do not foreclose the possibility of extraordinary circumstances under which a denial of summary judgment will be subject to post-trial review on appeal. We are not without power to perform such a review; the flaw in this appeal would not appear to be jurisdictional. *Cf. Norton v. Sam's Club*, 145 F.3d 114, 117–18 (2d Cir.) (court can order a new trial even in the absence of a renewed motion for judgment as a matter of law if failure to do so would result in "manifest injustice"), *cert. denied,* —— U.S. ——, 119 S.Ct. 511, 142 L.Ed.2d 424 (1998). But there are no such circumstances that compel us to do so here. We therefore decline to review Magistrate Judge Heckman's denial of Massey–Ferguson's motion for summary judgment.

### III. The Jury Charge

#### A. *The Law*

Massey–Ferguson urges that the district court's jury instruction on the law of liability for design defects constituted reversible error because it did not reflect the teaching of *Biss v. Tenneco, Inc.*, 64 A.D.2d 204, 409 N.Y.S.2d 874 (4th Dep't 1978), *appeal denied,* 46 N.Y.2d 711, 389 N.E.2d 841, 416 N.Y.S.2d 1025 (1979). *Biss* sets forth an exception to manufacturers' strict liability with respect to injury resulting from the operation of equipment without optional safety gear. We review the district court's determination of state law *de novo* in this diversity case. *See Salve Regina College v. Russell*, 499 U.S. 225, 239, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

The New York law of strict products liability for design defects was summarized by the New York Court of Appeals in *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 450 N.E.2d 204, 463 N.Y.S.2d 398 (1983):

> A manufacturer is held liable regardless of his lack of actual knowledge of the [deficient] condition of [a] product because he is in the superior position to discover any design defects and alter the design before making the product available to the public. Liability attaches when the product, as designed, presents an unreasonable risk of harm to the user.
>
> In order to establish a prima facie case in strict products liability for design defects, the plaintiff must show that the manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.

*Id.* at 107, 450 N.E.2d at 207–08, 463 N.Y.S.2d at 401–02.

in the case at bar comes within no such exception.

The question for the jury ... is whether after weighing the evidence and balancing the product's risks against its utility and cost, it can be concluded that the product as designed is not reasonably safe.

*Id.* at 109, 450 N.E.2d at 208–09, 463 N.Y.S.2d at 402–03 (citation omitted). The Court of Appeals then listed various factors to be considered by the jury "[i]n balancing the risks inherent in the product, as designed, against its utility and cost." *Id.*

 *Biss v. Tenneco, Inc.* complements those principles. We understand *Biss* to apply, generally, to instances in which (i) a product that has a variety of uses is sold by a manufacturer intending for it to be employed in a use for which it is safe without available optional equipment, (ii) the product is equipped in compliance with the laws and accepted industry standards that are applicable to the features the absence or inadequacy of which are alleged to have caused or aggravated the injury, (iii) the plaintiff uses the product in a manner that the manufacturer did not intend it to be used and in which the optional equipment is needed to make it safe, and (iv) the availability of the optional equipment is "brought home to the purchaser", *Biss,* 64 A.D.2d at 207, 409 N.Y.S.2d at 876. If those factors are present, then, under *Biss* and a number of subsequent cases echoing its holding,[5] as a matter of law, the product is not defectively designed and the manufacturer will not be held liable to a purchaser or a purchaser's employee who is injured while using the product without the optional equipment, even if the optional equipment would have prevented the injury. "The 'legal responsibility, if any, for injury caused by machinery which has possible dangers incident to its use should be shouldered by the one in the best position to have eliminated those dangers.'" *Biss* 64 A.D.2d at 208, 409 N.Y.S.2d at 877 (quoting *Micallef v. Miehle Co., Div. of Miehle–Goss Dexter, Inc.,* 39 N.Y.2d 376, 387, 348 N.E.2d 571, 578, 384 N.Y.S.2d 115, 122 (1976)). In a *Biss* situation, according to this theory, the manufacturer cannot meaningfully assess the risk of selling the product without the safety feature prior to sale because it does not know the use to which the product later will be put. It is the purchaser, not the seller, "who is in the best position to make the cost-benefit analysis and act upon it." Guido Calabresi & Jon T. Hirschoff, *Toward a Test for Strict Liability in Torts,* 81 YALE L.J. 1055, 1063 (1972).

*Biss* itself is strikingly similar to the case at bar. The plaintiff's decedent was killed when the multi-use tractor he was operating, similar to the one by which Pahuta was injured and similarly owned by the decedent's employer, careened off the road and collided with a telephone pole. The decedent's life would have been spared had the tractor borne overhead protection. The claim was dismissed, though, upon the close of the plaintiff's case at trial. Justice Simons, later a Judge of the New York Court of Appeals, wrote for a unanimous Fourth Department:

One of the dangers which may be apprehended in the use of construction equipment is injury from roll-over. But that danger increases or lessens according to the job and site for which the equipment is purchased and used. It is not a danger inherent in a properly constructed loader. Neither is it a danger which the manufac-

**5.** *See, e.g., Scarangella v. Thomas Built Buses, Inc.,* 250 A.D.2d 664, 672 N.Y.S.2d 906 (2d Dep't 1998) (failure to provide audible back-up alarm as standard equipment for bus); *Patane v. Thompson and Johnson Equip. Co.,* 233 A.D.2d 905, 649 N.Y.S.2d 547 (4th Dep't 1996) (similar with respect to forklift); *Jackson v. Bomag GmbH,* 225 A.D.2d 879, 638 N.Y.S.2d 819 (3d Dep't 1996) (no design defect in construction roller without optional rollover protection which could have prevented fatality); *Paul v. Ford Motor Co.,* 200 A.D.2d 724, 607 N.Y.S.2d 90 (2d Dep't 1994) (failure to equip chassis-cab with audible back-up alarm/or flashing back-up light); *Fallon v. Clifford B. Hannay & Son, Inc.,* 153 A.D.2d 95, 550 N.Y.S.2d 135 (3d Dep't 1989) (hose reel with optional safety guide master was reasonably safe because there was only an occasional risk of entanglement without the guide, the risk of entanglement varied from one job site to another, and marketing the product with a standard guide would have substantially increased its cost).

Other jurisdictions have adopted similar doctrine. *See, e.g., Butler v. Navistar Int'l Transp. Corp.,* 809 F.Supp. 1202, 1206–07, 1209 (W.D.Va.1991) (rollover protection structure); *Morrison v. Kubota Tractor Corp.,* 891 S.W.2d 422, 428–29 (Mo.Ct.App.1994) (rollover protection structure); *Davis v. Caterpillar Tractor Co.,* 719 P.2d 324, 326–27 (Colo.Ct.App.1985) (rollover protection structure); *see also Villar v. E.W. Bliss Co.,* 134 Mich.App. 116, 350 N.W.2d 920, 922 (1984) (safety mechanism for punch press).

turer alone may discover or one which he is more favorably positioned to discover. If knowledge of available safety options is brought home to the purchaser, the duty to exercise reasonable care in selecting those appropriate to the intended use rests upon him. He is the party in the best position to exercise an intelligent judgment to make the trade-off between cost and function, and it is he who should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users.

64 A.D.2d at 207, 409 N.Y.S.2d at 876–77.

 We are bound, as was the district court, to apply the law as interpreted by New York's intermediate appellate courts in the *Biss* cases unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion. *See Grand Light & Supply Co. v. Honeywell, Inc.*, 771 F.2d 672, 678 (2d Cir.1985) (citing *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 132 (2d Cir.1984)); *accord Deeper Life Christian Fellowship, Inc. v. Sobol*, 948 F.2d 79, 84 (2d Cir.1991) (citing *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Pahuta has not provided us with any reason to believe that the New York Court of Appeals would disagree with *Biss*

and related cases, both in the appellate divisions and from other jurisdictions. Given the Court of Appeals' explanation that defective design analysis originated in tort law, "which traditionally has concerned itself with social policy and risk allocation by means other than those dictated by the marketplace," *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 259, 662 N.E.2d 730, 736, 639 N.Y.S.2d 250, 256 (1995), we have no reason ourselves to conclude that it would likely disagree with the allocation widely chosen by the appellate divisions and other courts in *Biss*-like circumstances.[6]

### B. The Charge

 Pahuta's case went to the jury on a double-faceted strict liability theory: that the tractor loader was defective both in design— the absence of overhead protection and the self-leveler—and because of a failure to warn.[7] The jury found for him on a special verdict form in a single finding as to both theories, rendering a verdict in his favor in excess of $2,000,000. Magistrate Judge Heckman's defective-design instruction read in its entirety:

> The product is defective if it is not reasonably safe; that is, if the product is so likely to be harmful, that a reasonable person who had actual knowledge of its potential

**6.** The author of this opinion would nonetheless have been inclined to certify the question of New York law's treatment of persons in Pahuta's circumstances to the New York Court of Appeals pursuant to our Local Rule § 0.27 and New York Court of Appeals Rule § 500.17, on the grounds that the *Biss* doctrine and its effect on this case are sufficiently "unsettled and significant" under the former and are "determinative" and without "controlling precedent of the Court of Appeals" under the latter. A bystander not employed by the purchaser who is injured under circumstances similar to Pahuta's might have been able to maintain a suit against both the manufacturer and the purchaser even if the purchaser was "the party in the best position to exercise an intelligent judgment to make the trade-off between cost and function, and [therefore] should bear the responsibility if the decision on optional safety equipment presents an unreasonable risk to users", *Biss*, 64 A.D.2d at 207, 409 N.Y.S.2d at 876–77. *Cf.* Calabresi and Hirschoff, *supra*, at 1072 ("If both the manufacturer and the user are in a better position than the third party victim to make the cost/benefit analysis, the strict liability

test would require, as a general rule, that the victim should recover, whether he sues the manufacturer or the user."). If so, in the author's view, the New York Court of Appeals should be given the opportunity to decide whether such an injured employee will be considered for these purposes to be like the non-employee bystander, with a possible cause of action against both the manufacturer and (except as limited by workers' compensation laws) the purchaser.

Judges Meskill and Walker disagree. They conclude, and this Court therefore concludes, that we are obliged to apply the settled law of the State established by the well-reasoned decisions in *Biss* and its progeny; that, in any event, it is the purchaser of the equipment, not the eventual user, whose cost and trade-off assessment is critical.

The author's view on the issue addressed in this footnote plays no part in the remainder of this opinion or in the resolution of this appeal.

**7.** At the charging conference, Pahuta abandoned a negligence cause of action as duplicative of his strict liability claim.

for producing injury would conclude that it should [not] have been marketed in that condition. It is not necessary to find that the manufacturer knew or should have known of the product's potential for causing an injury in order to determine that it is not reasonably safe.

It is sufficient that a reasonable person who did, in fact, know of the product's potential for causing injury and of the available alternative designs would have concluded that the product should have not have [sic] been marketed in that condition after balancing the risks involved for using the product against product's [sic] usefulness and its costs, and against the risks—usefulness and costs of the alternative designs as compared to the product the manufacturer did design.

A product is not defective or unreasonably dangerous merely because it is possible for someone to be injured while using it. A manufacturer is not a guarantor that nobody will get hurt in using its product. What a manufacturer must do is make a product which is free from defects and unreasonably-dangerous conditions.

In other words, the Plaintiff must show by a preponderance of the evidence that the MF tractor loader with fork attachment was defectively designed so that it was not reasonably safe for its intended use when it left the Defendant's possession. If the MF–20 tractor loader with fork attachment was reasonably safe for its intended use when it left the Defendant's possession, the Defendant cannot be held liable.

The first and second paragraphs were adopted from the New York standard pattern jury instruction on defective design. *See New York Pattern Jury Instructions, Civil,* § 2:141, at 554.

Massey–Ferguson objected to these instructions, both at the charging conference after the parties had rested and at the exception conference that was held immediately after the jury was instructed, on the ground that they did not reflect the *Biss* doctrine. The magistrate judge refused to add to the instructions, commenting that the proposed amendment would have "focused unevenly on the Defendant's defense and would have re-

sulted in an unbalanced charge, and I believe that the charge I did give adequately covered the issue and provided balance as well." Because Massey–Ferguson's objections were timely, the issue is properly before us. *See* Fed.R.Civ.P. 51 (a party must object to a jury charge by "stating distinctly the matter objected to and the grounds of the objection"); *see also Smith v. Lightning Bolt Prods., Inc.,* 861 F.2d 363, 370 (2d Cir.1988); *Hilord Chem. Corp. v. Ricoh Elecs. Inc.,* 875 F.2d 32, 38 (2d Cir.1989) (even where a party has, by its own procedural default, precluded itself from obtaining a judgment as a matter of law, that party may still challenge a "district court's alleged error in refusing to instruct the jury on an essential element of the case").

■■■■ "The standard governing review of a district court's jury charge is well-established. A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Hathaway v. Coughlin,* 99 F.3d 550, 552–53 (2d Cir.1996). A court's charge must be tested by viewing it as a whole and will not be disturbed if it is "correct and sufficiently covers the case so that a jury can intelligently determine the questions presented to it." *Id.; see also Castro v. QVC Network, Inc.,* 139 F.3d 114, 116 (2d Cir. 1998) ("A failure to give a required charge to the jury, if not harmless, constitutes abuse of discretion."). "An erroneous instruction, unless harmless, requires a new trial." *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994) (citation omitted).

If the *Biss* elements were met as a matter of fact, *i.e.,* if (i) the tractor loader had a variety of uses and Massey–Ferguson intended for it to be employed in a use for which it was safe without optional overhead protection, (ii) it was equipped by Massey–Ferguson in compliance with the laws and accepted industry standards that were applicable to overhead protection features, (iii) Pahuta's use of the tractor loader to load pipes in the manner in which he did was not intended by Massey–Ferguson and required overhead protection to make it safe, and (iv) the availability of the overhead protection was an option "brought home" to purchaser Keeler,

then Massey–Ferguson would be entitled to judgment as a matter of law. The evidence was sufficient to support, although it did not compel, a jury finding in its favor on each of those elements. But the charge did not inform the jury of its fact-finding responsibilities in that regard. The charge therefore did not adequately inform the jury as to the law.

The trial court was of the view that the instructions as given encompassed the *Biss* principle.[8] We do not see how. When the jury was told that Pahuta was required to prove "that the MF tractor/loader with fork attachment was defectively designed so that it was not reasonably safe for its intended use when it left the Defendant's possession," it may well have been left with the impression that, to be non-defective, the product had to be reasonably safe at the time of sale, "as is," for whatever use the *purchaser* may have "intended." That is contrary to the teaching of the *Biss* line of cases. In any event, the jury should not have been left to guess or interpolate as to what the applicable law for a multi-use product such as the tractor loader might have been.

The jury was also instructed on a failure to warn theory. Massey–Ferguson, although questioning the verdict on that score, does not complain about that portion of the charge. But the special verdict form conflated liability for strict liability for defective design and for failure to warn into a single question. We therefore cannot tell whether the jury properly found for the plaintiff on the failure to warn theory and cannot consider affirming the judgment below on that basis. We are constrained to reverse and remand for a new trial with proper instructions on both the design defect and failure to warn claims with the suggestion that the trial court require special written jury findings for the separate theories.

### CONCLUSION

The order denying the motion for judgment as a matter of law is affirmed. We

decline to review the order denying summary judgment. The case is remanded to the district court for a new trial. Each party will bear its own costs on this appeal.

---

**8.** *Cf. Castro*, 139 F.3d at 119 ("The [trial] court charged the jury that '[a] [multi-use] product is defective if it is not reasonably safe[,][t]hat is, if the product is so likely to be harmful to persons that a reasonable person who had actual knowledge of its potential for producing injury would conclude that it should not have been marketed in that condition.' And, so instructed, the jury presumably found that the [product], because it had many advantages in a variety of uses, did not fail the risk/utility test.") (alterations in original).