**Jess D. McCAVITT, Plaintiff,**

v.

**SWISS REINSURANCE AMERICA CORPORATION, Defendant.**

**No. 99 Civ. 11638(CLB)(GAY).**

United States District Court,
S.D. New York.

March 21, 2000.

Pearl Zuchlewski, New York City, for plaintiff.

Francis P. Alvarez, Jackson, Lewis, Schnitzler & Krup, Stamford, CT, for defendant.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed February 14, 2000, heard and fully submitted on March 17,

2000, Swiss Reinsurance America Corp ("Swiss Re"), defendant in this diversity suit to recover damages, injunctive and declaratory relief for violation of New York Labor Law § 201–d, moves pursuant to Rule 12(b)(6) Fed.R.Civ.P. to dismiss the complaint for failure to state a claim. Plaintiff filed opposition papers on March 6, 2000. Defendant filed reply papers on March 16, 2000.

By a separate motion filed February 14, 2000, heard and fully submitted on March 17, 2000, defendant Swiss Re moves pursuant to Rule 12(f), Fed.R.Civ.P. to strike Plaintiff's demand for punitive and emotional distress damages, attorneys' fees, costs, disbursements and interest. Plaintiff filed opposition papers on March 6, 2000.

## FACTUAL BACKGROUND

The following facts are assumed true for purposes of these motions. Plaintiff Jess D. McCavitt is a resident of Fairfield, Connecticut. Defendant Swiss Re is a subsidiary of Swiss Reinsurance Inc., a Swiss corporation. Swiss Re has its principal offices in Armonk, New York. This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

In 1996, Plaintiff entered the employment of Defendant, within the State of New York and became a senior vice president. At about the same time, he also began "dating" Ms. Diane Butler, Defendant's Manager of Client Services and also a senior vice president. Plaintiff did not report directly to Ms. Butler at any point during his employment with Swiss Re. Plaintiff alleges and the Court assumes for purposes of the motion that his relationship with Ms. Butler occurred entirely after working hours, and that it had no adverse impact on his work.

In June 1999, Ms. Butler informed Mary Borba, Defendant's Senior Vice President of Human Resources of her relationship with Plaintiff. Later that month, Defendant denied Plaintiff appointment to a newly created Claims Manager position.

Plaintiff claims that many senior Swiss Re managers believed he should have been appointed to the position, and that he was bypassed for promotion because of his relationship with Ms. Butler. In early July 1999, Ms. Borba informed Plaintiff that he would be terminated. Defendant's Senior Vice President provided a written explanation for Plaintiff's termination. The explanation stated that Plaintiff's job "went away", but focused largely on the relationship between Plaintiff and Ms. Butler. The explanation stated that there were no available positions at the time of Plaintiff's discharge, but Plaintiff states that some were available. Plaintiff's employment was terminated August 16, 1999, and his responsibilities were transferred to other individuals. Plaintiff filed this action on November 30, 1999. For purposes of the motion, the Court assumes Plaintiff was terminated solely by reason of his off-duty relationship with a fellow officer of the employer corporation.

## DISCUSSION

*Motion to Dismiss*

In determining whether the complaint states a claim, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Thomas v. City of New York,* 143 F.3d 31, 36–37 (2d Cir.1998). Dismissal is appropriate where "it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Id.; Scotto v. Almenas,* 143 F.3d 105, 109–110 (2d Cir.1998). This case is founded solely on § 201–d of the New York Labor Law, which reads in relevant part as follows:

> **§ 201–d. Discrimination against the engagement in certain activities**
>
> 1. Definitions. As used in this section:
>
> \* \* \* \* \* \*
>
> b. *"Recreational activities" shall mean any lawful, leisure-time activity, for*

*which the employee receives no compensation and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material:*

\*    \*    \*    \*    \*    \*

2.   Unless otherwise provided by law, it shall be unlawful for any employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of:

\*    \*    \*    \*    \*    \*

b.   An individual's legal use of consumable products prior to the beginning or after the conclusion of the employee's work hours, and off the employer's premises and without use of the employer's equipment or other property;

c.   An individual's legal recreational activities outside work hours, off the employer's premises and without use of the employer's equipment or other property; or

\*    \*    \*    \*    \*    \*

(Emphasis added)

Subparagraph 3   of the statute contains exceptions not material to this case.

The only reported New York State case to consider whether "dating" is a "legal recreational activity" for purposes of § 201–d(2)(c) is the opinion of a divided panel in *State v. Wal–Mart Stores Inc.,* 207 A.D.2d 150, 621 N.Y.S.2d 158 (3d Dept. 1995). In *Wal–Mart,* the Appellate Division held that dating was not a protected activity under the statute. The majority opinion of Justice Mercure held that dating "is entirely distinct from and, in fact, bears little resemblance to 'recreational activity.'" *Id.* at 159–60. The Court also held that "an indispensable element of 'dating', in fact its *raison d'etre*, is romance," and that this element distin-

guished dating from recreational activities. *Id.* at 159.   The dissenting opinion of Justice Yesawich notes that "while the majority encumbers the word 'dating' with an 'amorous interest' component," this is inconsistent with the accepted dictionary definition of a "date" as no more than "a social engagement between persons of opposite sex."   The dissent argues that even so encumbered, dating as a form of social interaction surely qualifies as recreation. The word "relationship" as used in the context of the complaint clearly does carry an amative connotation.   *Wal–Mart* has not been widely cited, and the New York Court of Appeals has not reached the issue during the five years which have elapsed, nor has the state legislature responded to what Plaintiff now suggests is an impermissible narrowing of a remedial statute.

■   Accordingly, *Wal–Mart,* as the decision of an intermediate appellate state court on an issue of state law, is binding on this Court exercising diversity jurisdiction unless the district court concludes it is highly likely that the highest state court would reach a different conclusion.   *Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 134 (2d Cir.1999).   This Court believes that such a conclusion would be unwarranted in this case.

■   We begin our analysis with the understanding in New York, as was held in *Cavanaugh v. Doherty,* 243 A.D.2d 92, 675 N.Y.S.2d 143, (3d Dept.1998): "[A]bsent a Constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired."   *Murphy v. American Home Products Corp.,* 58 N.Y.2d 293, 305, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983), *Kaminski v. United Parcel Service,* 120 A.D.2d 409, 501 N.Y.S.2d 871, 873 (1st Dept.1986).   Both the New York State Legislature and the New York Court of Appeals have through the years resisted judicial intrusions on the presumption of an employment of will, and statutes in

derogation of the common law right of an employer to terminate an employee for no reason, or for a bad reason, have been strictly construed. This Court is convinced, as was the majority in *Wal–Mart,* that the statutory standard of construction *noscitur a sociis,* would be applied to prevent the concept of "dating" from being regarded as within a statutory definition of recreational activities including sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material.

Except in cases of extreme ambiguity the New York courts do not have recourse to the legislative history of a statute in order to extend its meaning beyond the plain words. *Prego v. City of New York,* 147 A.D.2d 165, 541 N.Y.S.2d 995, 999 (2d Dept.1989). The legislative history of § 201–d is not helpful to the Plaintiff. History tells us that one of the primary motivations was to protect smokers and users of tobacco products against the extensive vigilantism which their lawful leisure time recreational activity has invoked in recent years. The Governor, in his message in 1992 approving the legislation, wrote that the proposed statute properly "[s]trikes the difficult balance between the right to privacy in relation to non-working hours activities of individuals and the right of employers to regulate behavior which has an impact on the employee's performance or on the employer's business." (Memorandum dated August 7, 1992, filed contemporaneously with approval of the statute.)

Nothing in the legislative history suggests that dating or personal amatory relationships between co-employees was intended to be protected by this statute, the enactment of which was accomplished only after revisions to satisfy lengthy opposition focused on its prospective interference with the concept of employment at will.

The Court must remain aware that there are some employers, which, as did Wal–Mart, continue to object to relationships, nepotism and the like in the workplace. Whether this is a wise position to take is beside the point. Unless the New York legislature says so clearly, and it has not, this Court concludes that an employer may hold such policies, and that the statute does not protect activities associated with dating or personal relationships, romantic or otherwise.

We would think the issue simple and hardly worthy of a written opinion, except that Plaintiff has relied on two Southern District cases which seem to take issue with the rule of the *Wal–Mart* case. In *Pasch v. Katz Media Corp.,* 1995 WL 469710 (S.D.N.Y. Aug. 8, 1995), Judge Patterson of this Court found in connection with a motion for a judgment on the pleadings that a complaint stating that Plaintiff employee was demoted because she had, with the full knowledge of her employer, maintained a "personal relationship," including co-habitation, with a recently discharged vice-president of the employer stated a claim. The court in *Pasch* simply concluded that the New York Court of Appeals "would not construe the statute so narrowly as to exclude 'co-habitation' from a class of protected recreational activities." The Court in *Pasch* conceded, however, that the new bill as enacted substituted "recreational/leisure activity" for "legal activity" as set forth in a prior version vetoed by the Governor, thereby clarifying and indeed reducing the scope of the statutory protection.

Plaintiff also relies on *Aquilone v. Republic National Bank of New York,* 1998 WL 872425 (S.D.N.Y Dec.15, 1998), an opinion by Judge Scheindlin of this Court. The *Aquilone* case, which also arose on a motion to dismiss, concerned a "close personal friendship" between plaintiff, who was head of the purchasing department and first vice president of a bank, and a vendor who operated a shredding business which served the bank. Citing the purpose of the statute which was to "prohibit employers from discriminating against their employees simply because the employer does not like the activities an em-

ployee engages in after work," the court in *Aquilone* held that the close personal friendship present in the *Aquilone* case was "analogous to co-habitation" and concluded that a "friendship that occurs off the employer's premises without use of the employer's equipment and not on the employer's time should be considered a protected activity for which an employer may not discriminate ...," and that the employee was protected under § 201–d.

Probably these two cases can be distinguished on their facts. At least in the context of the present case, and without venturing any prediction as to what the New York Court of Appeals would do if confronted with a case of co-habitation, as in *Pasch* or a personal friendship with a vendor who spoke ill of the then Chairman of the Board of Republic Bank as in *Aquilone*, this Court concludes that at least in the factual context of this case, a dating relationship would not be within the protection of the statute, and that the majority opinion in *Wal–Mart*, when and if the issue reaches the New York Court of Appeals would be followed by that court. In any event, this Court is not required to follow the decisions of coordinate district judges. *See United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982) ("Thus, judges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose."); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 430 n. 10, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) ("If there is a federal district court standard, it must come from the court of appeals, not from the over 40 district court judges in the Southern District of New York, *each of whom sits alone and renders decisions not binding on the others.*") (Emphasis added).

The motion to dismiss the complaint is granted.

*Damages and Fees*

By a separate motion the Defendant seeks to "strike" Plaintiff's demand for punitive and emotional distress damages, attorney's fees, costs, etc. This issue also involves New York State law. Because this Court is cognizant of the fact that our Court of Appeals might take a different view of § 201–d, or more likely certify the question to the New York Court of Appeals, which this Court lacks the power to do, we will consider this motion although our dismissal of the complaint may moot the motion. If our/ Court of Appeals sees fit to certify this case to the New York Court of Appeals, both questions should be certified.

■ It is uncontradicted that in the debate on the floor of the Senate concerning the bill that became § 201–d of the New York Labor Law, the sponsor, Senator Lack of Long Island, stated that "there is no intent to require punitive damages or allow punitive damages ... just the normal damages which would flow from a violation of the section and no more. That is certainly the legislative intent, and I will be filing ... a letter to that effect with the Governor as the bill goes to his desk." He did so. New York Law therefore would appear not to justify punitive damages for a violation of § 201–d. Similarly, the statute does not call for attorney's fees and absent legislative authority such fees would not be awarded by a New York court. The same argument prevails as to the so-called heart-balm damages sought for emotional distress, commonly awarded in federal employment discrimination cases and sought in this case. Here again, there appears to be no authority for such damages. The motion to strike is also granted.

The Clerk shall file a final judgment.

SO ORDERED.