**Jess D. McCAVITT, Plaintiff–Appellant,**

v.

**SWISS REINSURANCE AMERICA CORPORATION, Defendant–Appellee.**

No. 00–7391.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 2000.

Decided Jan. 08, 2001.

Geoffrey Mort, Goodman & Zuchlewski LLP, New York, NY, for Plaintiff–Appellant.

Frank Alvarez, Jackson, Lewis, Schnitzler & Krupman, Stamford, CT, for Defendant–Appellee.

Before: McLAUGHLIN, SACK, Circuit Judges, and CHATIGNY, District Judge.*

PER CURIAM:

Appeal from a judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge* ) dismissing the plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The complaint was dismissed on the ground that romantically dating a co-worker is not a protected "legal recreational activit[y] outside work hours" under New York Labor Law § 201–d.

Affirmed.

The sole issue on this appeal is whether romantic dating constitutes a "recreational activity" as defined in New York Labor Law § 201–d.

## BACKGROUND

On November 30, 1999, the plaintiff, Jess D. McCavitt, brought suit against the defendant, Swiss Reinsurance America Corporation ("Swiss Re"), in the United States District Court for the Southern District of New York. The plaintiff alleges that he was hired by Swiss Re (or by a company related to Swiss Re; the complaint is unclear) in 1996, and that by January 1999, he was a Swiss Re officer whose performance was highly regarded by his superiors.

According to the complaint, "[s]ince 1999, plaintiff has been involved in a personal relationship with Diane Butler [also a Swiss Re officer].... Plaintiff and Ms. Butler dated and spent time together after

* The Honorable Robert N. Chatigny, United States District Court Judge for the District of Connecticut, sitting by designation.

working hours." (At oral argument before us, the plaintiff through counsel confirmed that by "personal relationship" and "dated," the plaintiff meant that the plaintiff and Ms. Butler were romantically involved with one another.) The complaint alleges that even though "[t]he personal relationship between plaintiff and Ms. Butler has had no repercussions whatever for the professional responsibilities or accomplishments of either" and "Swiss Re ... has no written anti-fraternization or anti-nepotism policy," the plaintiff was passed over for promotion and then discharged from employment largely because of their dating.

The plaintiff asserts that his termination violated New York Labor Law § 201–d, which states in pertinent part:

2. Unless otherwise provided by law, it shall be unlawful for any employer or employment agency to refuse to hire, employ or license, or to discharge from employment or otherwise discriminate against an individual in compensation, promotion or terms, conditions or privileges of employment because of:

. . . .

c. an individual's legal recreational activities outside work hours, off of the employer's premises and without use of the employer's equipment or other property.

*Id.*, § 201–d(2). The statute defines "recreational activities" as:

any lawful, leisure-time activity, for which the employee receives no compensation and which is generally engaged in for recreational purposes, including but not limited to sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material.

*Id.*, § 201–d(1)(b).

On February 14, 2000, Swiss Re filed a motion to dismiss pursuant to Fed.R.Civ.P.

12(b)(6), arguing that romantic dating is not a protected "recreational activit[y]" under § 201–d. The district court (Charles L. Brieant, *Judge* ) agreed and on that basis granted Swiss Re's motion to dismiss. *See McCavitt v. Swiss Reinsurance Am. Corp.*, 89 F.Supp.2d 495, 499 (S.D.N.Y.2000).

The district court noted that it was required to "accept as true all material facts alleged in the complaint and draw all reasonable inferences in favor of" the plaintiff, as the nonmoving party. *Id.* at 496 (citing *Thomas v. City of New York*, 143 F.3d 31, 36–37 (2d Cir.1998)). Dismissal is appropriate only if "it appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Id.* (quoting *Thomas*, 143 F.3d at 36 (internal quotation marks and additional citation omitted)). The question for the district court was therefore whether the termination of the plaintiff's employment resulting from his romantic dating of Ms. Butler, as alleged in the complaint, was a discharge prohibited by § 201–d(2)(c).

Although the New York Court of Appeals has never addressed this issue, the Appellate Division of the New York Supreme Court, Third Department, has.[1] In *State v. Wal–Mart Stores, Inc.*, 207 A.D.2d 150, 621 N.Y.S.2d 158 (3d Dep't 1995), that court held, albeit over a dissenting opinion, that romantic dating is not a protected "recreational activity." The district court considered itself bound by *Wal–Mart* because it was not "highly likely that the highest state court would reach a different conclusion," *McCavitt*, 89 F.Supp.2d at 497 (citing *Pahuta v. Massey–Ferguson Inc.*, 170 F.3d 125, 134 (2d Cir.1999)). In reaching this conclusion, the district court relied

---

1. Dating and § 201–d are mentioned in one other New York Appellate Division opinion. *See Carey v. de Souza*, 254 A.D.2d 119, 678 N.Y.S.2d 264 (1st Dep't 1998). In that case, the court assumed that dating is a protected recreational activity for purposes of the decision but did not consider the issue on its merits. A Nassau County New York Supreme Court has determined that "recreational activities" does not include "personal relationships (i.e., dating)." *Bilquin v. Roman Catholic Church, Diocese of Rockville Centre*, No. 0118588/99 (Sup.Ct. Nassau County, Sept. 12, 2000).

in part on the principle that under New York law, "absent a Constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired." *Id.* (quoting *Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 305, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232, 237 (1983) (internal quotation marks and alteration omitted)). The court reviewed the legislative history of the statute, but found it to be inconclusive. *See id.* at 498, 461 N.Y.S.2d 232, 448 N.E.2d 86. The district court also applied the cannon of statutory construction known as *noscitur a sociis*,[2] "to prevent the concept of 'dating' from being regarded as within a statutory definition of recreational activities including sports, games, hobbies, exercise, reading and the viewing of television, movies and similar material." *Id.*

The court noted that while two other Southern District courts had interpreted the statute more broadly than this district court thought warranted, *see Pasch v. Katz Media Corp.*, No. 94 Civ. 8554, 1995 WL 469710, 1995 U.S. Dist. LEXIS 11153 (S.D.N.Y. Aug.8, 1995) (deciding that New York Court of Appeals would deem cohabitation to be a protected recreational activity under § 201–d); *Aquilone v. Republic Nat'l Bank of New York*, No. 98 Civ. 5451, 1998 WL 872425, 1998 U.S. Dist. LEXIS 19531 (S.D.N.Y. Dec.15, 1998) (holding that an employee's friendship with another person, where contacts between them took place off the employer's premises and not on the employer's time, was protected recreational activity under § 201–d), it was not bound by those decisions, *see McCavitt*, 89 F.Supp.2d at 498–99 (citing, *inter alia*, *United States v. Birney*, 686 F.2d 102, 107 (2d Cir.1982)).

**2.** "A canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately sur-

## DISCUSSION

Having reviewed de novo the district court's decision to dismiss the complaint for failure to state a cause of action, *see Elec. Communications Corp. v. Toshiba Am. Consumer Prod., Inc.*, 129 F.3d 240, 242 (2d Cir.1997), we affirm the court's judgment substantially for the reasons set forth in its opinion. We agree with the district court that our decision in this case is governed by the Third Department's decision in *Wal–Mart*. As the district court noted, *see McCavitt*, 89 F.Supp.2d at 497, we "are bound ... to apply [New York state] law as interpreted by New York's intermediate appellate courts ... unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion." *Pahuta*, 170 F.3d at 134. We, like the district court, find no persuasive evidence—nothing in logic, the language of § 201–d, its legislative history, or New York state case law—that leads us to conclude that the New York Court of Appeals would hold that romantic dating is a "recreational activity" under New York Labor Law § 201–d(1)(b) contrary to the holding of *Wal–Mart*. To the extent that *Pasch* and *Aquilone* suggest a contrary result, for the foregoing reasons, we disagree.

## CONCLUSION

The judgment of the district court is affirmed.

McLAUGHLIN, J., concurs in a separate opinion.

McLAUGHLIN, Circuit Judge, concurring:

Sister Mary Lauretta, a Roman Catholic nun, once counseled:

To be successful, the first thing

rounding it." *Black's Law Dictionary* 1084 (7th Ed.1999).

to do is fall in love with your work.

She should, of course, now have to add:

Just don't fall in love *at* work.

Although I concur in my colleagues' decision, I do so grudgingly. We have been unable to find in the record before us persuasive evidence that the New York Court of Appeals would reach a conclusion different from that reached by the Appellate Division, Third Department, in *Wal-Mart.* I harbor the hope that, if given the chance, it would.

On the record before us, it appears that Jess McCavitt and Diane Butler, both unmarried, committed no crime (either religious or secular), and their relationship (the romantic aspect of which was explored solely outside the office, during non-working hours) adversely affected neither their job performance nor the business interests of Swiss Re.

Ms. Butler, however, made one fatal mistake—she told Swiss Re's Senior Vice President of Human Resources (who apparently serves as the Senior Vice President of *Employee Relations* as well), that she was involved in a personal relationship with Mr. McCavitt. Immediately, what had been nobody's business became everybody's business. And, as it is no secret that is known by three, Mr. McCavitt's relationship with Swiss Re came to an abrupt end.

Concededly, New York continues to adhere to the common-law rule of employment-at-will. Major incursions, however, have been made into that hoary doctrine, not the least of which is N.Y. Labor Law § 201–d, barring employers from firing workers because of "legal recreational activities outside work hours, off of [sic] the employer's premises and without use of the employer's equipment or other property." Not especially enlightening is the statute's definition of recreational activities as "any lawful, leisure-time activity ... which is generally engaged in for recreational purposes, including, but not limited to sports, games, hobbies, exercises, read-ing and the viewing of television, movies and similar material."

Romance has a distinctly distinguished history of originating in office contacts. It is one of the most clichéd of movie plots—see notably the Katharine Hepburn and Gig Young (or, if you prefer, Spencer Tracy) roles in the holiday classic "Desk Set." As Justice Frankfurter observed, "[T]here comes a point where this Court should not be ignorant as judges of what we know as men." *Watts v. Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949).

I fully endorse the reasoning of Justice Paul J. Yesawich, a most learned and distinguished member of the Appellate Division, Third Department, who wrote in his dissent in *Wal–Mart:*

> In my view, given the fact that the Legislature's primary intent in enacting Labor Law § 201–d was to curtail employers' ability to discriminate on the basis of activities that are pursued outside of work hours, and that have no bearing on one's ability to perform one's job, and concomitantly to guarantee employees a certain degree of freedom to conduct their lives as they please during nonworking hours, the narrow interpretation adopted by the majority is indefensible.

207 A.D.2d at 153, 621 N.Y.S.2d at 160. Nevertheless, I agree with my colleagues that we are bound by the majority opinion in *Wal–Mart.*

If, when deciding to protect "recreational activities," the Legislature saw fit to protect an employee's right to engage in such historically revered activities as riding a motorcycle and hang-gliding, it certainly should have extended protection to the pursuit of a romantic relationship with whomever an employee chooses—even a fellow, unmarried employee—outside the office, during non-working hours. This is compellingly so in today's society, where ostracizing anyone associated with one's office from the acceptable dating pool

would doom the majority of the population to the life of a Trappist monk.

It is repugnant to our most basic ideals in a free society that an employer can destroy an individual's livelihood on the basis of whom he is courting, without first having to establish that the employee's relationship is adversely affecting the employer's business interests. Lest our faith in this free society be dampened, it is my sincerest hope that, if given the chance, the New York Court of Appeals will find that the necessary protection lies within N.Y. Labor Law § 201–d. If not, may the State Legislature amend the statute accordingly.