The NEPTUNE GROUP, INC.,
Plaintiff/Counterclaim
Defendant,

v.

MKT, INC., Defendant/Counterclaim
Plaintiff.

No. CIV.3:94CV587(CFD).

United States District Court,
D. Connecticut.

Jan. 3, 2002.

---

Louis R. Pepe, R. Bradley Morris, Brendan J. Faulkner, Pepe & Hazard, Hartford, CT, Michele R. Celentano, Dimenstein, Celentano & Buzzi, Milford, CT, Mark J. Headley, Kramer, Levin, Naftalis & Frankel, New York City, Steven David Ecker, Cowdery, Ecker & Murphy, Hartford, CT, Robert N. Chatigny, Hartford, CT, for plaintiff.

Stephen H. Solomson, Charles I. Miller, Michael C. Boardman, O'Connell, Flaherty & Attmore, Hartford, CT, Daniel Philip Kulakofsky, West Hartford, CT, David M. Bizar, Day, Berry & Howard, Hartford, CT, James F. Stapleton, Thomas D. Goldberg, Catherine

Dugan O'Connor, Day, Berry & Howard, Stamford, CT, for defendants.

### RULING ON MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR IMPOSITION OF STATUTORY INTEREST

DRONEY, District Judge.

This action, involving a contract dispute between the plaintiff/counterclaim defendant, The Neptune Group; Inc. ("Neptune"), and its former independent sales representative, the defendant/counterclaim plaintiff, MKT, Inc. ("MKT"),[1] was tried to a jury from March 26 to April 9, 2001. The jury found against Neptune on all claims in its complaint, and the jury found in MKT's favor on part of its breach of contract counterclaim and on its breach of the implied covenant of good faith and fair dealing counterclaim. The jury awarded MKT damages of $386,000.

Pending is Neptune's Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure (the "Rule 50 Motion"),[2] and MKT's Motion for Imposition of Statutory Interest pursuant to Conn. Gen.Stat. § 37–3a. For the reasons discussed below, Neptune's Rule 50 Motion is GRANTED in part and DENIED in part, and MKT's Motion for Imposition of Statutory Interest is DENIED.

## I. BACKGROUND

The jury could have reasonably found the following facts. As part of its business, Neptune purchased multi-million dollar computers from Cray Research, Inc. ("Cray"), a computer manufacturer. As such computers were often on lease to other entities, Neptune would take an assignment of the lease from Cray, and at the end of a lease, Neptune remarketed the computer, sometimes to the original lessee and often by reselling it back to the manufacturer. In 1989, Neptune entered into an agreement with James Tress ("Tress") to have MKT, a company of which

Tress was the principal and shareholder, act as Neptune's independent sales representative with respect to Cray.

MKT first began working for Neptune under an oral contract (the "Oral Agreement"), and completed the first Cray computer transaction in late 1989. On February 4, 1991, the parties entered into the first written contract (the "Arco Agreement"). On July 29, 1991, the parties entered into a second written contract (the "Representation Agreement"), which memorialized and expanded upon the Oral Agreement and set forth MKT's compensation terms. The Representation Agreement made MKT Neptune's exclusive representative with Cray and Neptune's fiduciary. Commissions under the Representation Agreement were to be paid to MKT in three parts: (a) one-half percent of equipment cost upon Neptune's initial acquisition of a computer; (b) one-half percent of Neptune's net proceeds upon remarketing of that computer; and (c) a profit sharing commission of fifteen percent of Neptune's net profit, if any, on the lease transaction.

In late 1990, Neptune sold back to Cray for $3.5 million a Cray "XMP" computer which had recently come off lease from E.I. Du Pont de Nemours & Company, Inc. ("Dupont"). At the same time, Neptune purchased a new Cray "YMP" computer already on lease to Dupont. Neptune also paid Concord Asset Management, Inc. ("Concord"), its equity lender, $3.5 million to release its outstanding lien on the XMP.

On December 10, 1990, MKT invoiced Neptune for $74,434 in commissions pursuant to the Oral Agreement that was later memorialized in the Representation Agreement. That invoice sought: 1) a Paragraph 2(b) commission of one-half percent of the proceeds of the sale of the XMP; and 2) a Paragraph 2(a) commission of one-half percent of the acquisition cost of the YMP. Neptune paid these commissions on December 21, 1990.

---

**1.** MKT's principal and shareholder, James Tress ("Tress"), was made a party to this action on the theory that MKT was Tress's alter ego. The jury rejected Neptune's claim against Tress on that theory, and that issue was not pursued by Neptune in its post-verdict motions.

**2.** Neptune renewed its Rule 50(a) motion at the close of the evidence, thereby entitling it to pursue this motion. *See Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 129 (2d Cir.1999).

On December 2, 1993, MKT sent Neptune an invoice for a profit sharing commission in the amount of $357,936, which MKT claimed was due under the terms of Paragraph 2(c) of the Representation Agreement[3] for alleged profit earned by Neptune on the YMP computer. Neptune refused to pay the commission.

On January 6, 1994, MKT terminated the Representation Agreement, citing Neptune's refusal to pay the claimed profit sharing commission on the YMP transaction. Subsequently, Neptune brought this action alleging breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, and violation of Connecticut's Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42–110a, et seq., as well as a declaratory judgment that MKT had been fully paid for all commissions it was due. MKT counterclaimed against Neptune, alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of CUTPA. MKT's counterclaim sought: (1) on the YMP computer, a profit sharing commission of $354,000 under Paragraph 2(c) and a remarketing commission of $3,900 under Paragraph 2(b) of the Representation Agreement; (2) a remarketing commission of $32,000 under Paragraph 2(b) of the Representation Agreement for six Cray computers that were repurchased by Cray from Neptune after MKT had terminated the Repre-

sentation Agreement; (3) a remarketing commission of $8,522 under Paragraph 2(b) of the Representation Agreement for a certain credit issued by Cray to Neptune; (4) an $1,800 commission under the Arco Agreement; and (5) a profit sharing commission of $346,000 under Paragraph 2(c) of the Representation Agreement on the "balance" or entire "pool" of computers.

The jury awarded MKT the profit sharing commission on the YMP ($354,000) and the remarketing commission on the six Cray computers ($32,000).[4] MKT's remaining four commission claims were denied. MKT also prevailed on its claim for breach of the implied covenant of good faith and fair dealing. Neptune moved for judgment as a matter of law pursuant to Rule 50, and the Court reserved decision. After the jury verdict, Neptune orally renewed its Rule 50 Motion. On April 23, 2001, Neptune filed its written Rule 50 Motion and a supporting memorandum of law.

## II. RULE 50 MOTION

### A. Standard

■■■ "Because a judgment as a matter of law intrudes upon the rightful province of the jury, it is highly disfavored." *Prestige Imports, Inc. v. Malick*, No. 5:91–CV–00450(EBB), 2001 WL 286846, *1 (D.Conn. March 13, 2001). Under Rule 50, judgment

---

3. Paragraph 2(c) provides:
   Fifteen Percent (15 percent) of Neptune's net profit after recovery from user rents or sale proceeds of all Neptune's investment (Neptune's investment shall be defined as equipment costs less actual senior debt proceeds and any rental, trade-in or other credits) including actual interest thereon, and out-of-pocket expenses, including without limitation, any compensation paid to you or Cray or any other third party.

4. At oral argument for the Rule 50 motion, MKT argued that, since the jury made one damage award of $386,000.00, it was impossible for the Court to determine the basis of the jury's award of damages. However, in its Memorandum in Opposition to the Rule 50 Motion, MKT stated the jury awarded it the profit sharing commission of $354,000 and the remarketing commission of $32,000, which total $386,000. Furthermore, in MKT's Memorandum of Law in Support of its Motion for Imposition of Statutory Interest, MKT stated:

   The $386,000.00 award, while not specifically enumerated in the General Verdict Form, can be reasonably understood to be composed of two of the damage claims presented by MKT into evidence at the trial. The first, the commission claim under Paragraph 2(c) of the July 1991 agreement .... The second, the commission claim under Paragraph 2(b) ... in the amount of $32,000.00.

   Moreover, this Court notes that, out of MKT's six commission claims, which were individually itemized for the jury, the only combination that results in a sum of $386,000 is the Paragraph 2(b) remarketing commission for the six Cray computers and the Paragraph 2(c) profit sharing commission on the YMP. The Court, therefore, understands the jury's damage award to represent an award of those two commissions. Neptune acknowledged the propriety of this understanding in its proposed memorandum of decision on its Rule 50 motion.

as a matter of law is only appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Merrill Lynch Interfunding, Inc. v. Argenti,* 155 F.3d 113, 120 (2d Cir.1998) (internal quotations omitted). "[A] court may properly grant judgment as a matter of law where viewed in the light most favorable to the nonmoving party, the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached." *Id.* (internal quotations omitted) (citations omitted); *Samuels v. Air Transport Local 504,* 992 F.2d 12, 14 (2d Cir.1993) *cert. denied,* 513 U.S. 1171, 115 S.Ct. 1146, 130 L.Ed.2d 1105 (1995). Accordingly, judgment as a matter of law is properly granted only where "there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded" jurors could not arrive at the verdict reached, or where there exists "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture . . . ." *Mattivi v. South African Marine Corp., "Huguenot",* 618 F.2d 163, 168 (2d Cir.1980).

### B. Sufficiency of Evidence as to Profit Sharing Commission on the YMP Computer

■ Neptune contends that there was not a sufficient evidentiary basis upon which the jury could have found that MKT was due a profit sharing commission on the YMP computer pursuant to Paragraph 2(c) of the Representation Agreement. Neptune contends, and MKT does not dispute, that the obligation to pay a profit sharing commission on the YMP transaction was contingent upon two events: (1) the YMP transaction had to be profitable; and (2) Neptune's pool of Cray computers had to be profitable. Neptune contends that the evidence established that these two conditions were not satisfied and that no reasonable jury could conclude otherwise.

### 1. YMP Transaction Profitability

Neptune makes three arguments regarding the jury's findings regarding the YMP transaction profitability. First, Neptune argues that the jury could not have reasonably found that the XMP was a "credit" against the purchase of the YMP machine, making the cost of the YMP computer $7.8 million, rather than $11.3 million. Second, Neptune argues, even assuming the XMP was such a "credit", the payment to Concord of $3.5 million to release its XMP lien must be added to the YMP transaction as part of Neptune's "equipment cost" or an "out of pocket expense" pursuant to Paragraph 2(c) of the Representation Agreement, thereby eliminating any profit on the transaction. Finally, Neptune argues, again assuming that the cost of the YMP was $7.8 million, the jury could not have reasonably found that the $1.2 million in borrowed senior debt funds left over after the purchase of the YMP computer comprise "user rents or sale proceeds" of which MKT is entitled to fifteen percent under Paragraph 2(c) of the Representation Agreement.

Though the Court acknowledges that Neptune offered evidence at trial regarding documents indicating the "purchase price" of the YMP to be $11.3 million, the Court finds that there was sufficient evidence before the jury upon which they could have reasonably concluded that the XMP was a trade-in "credit" against the cost of the YMP, reducing its cost to $7.8 million. The Court also finds that the jury was entitled to conclude that the payment to Concord of $3.5 million to obtain release of its XMP lien was not part of Neptune's "equipment cost" or an "out of pocket expense" pursuant to Paragraph 2(c) of the Representation Agreement to be treated as part of the calculation in determining net profit on the YMP transaction. As noted by MKT in its memorandum in opposition to the Rule 50 Motion, the jury could have reasonably found that "out of pocket expenses" or "equipment costs" in Paragraph 2(c) referred to expenses associated with the machine that is the subject of the investment, rather than expenses associated with a machine traded in against the value of the subject machine. The jury could have

reasonably concluded that, if "out of pocket expenses" in Paragraph 2(c) represents the cost of paying off liens on machines traded in against the value of a new machine, it would nullify the "trade-in" language in Paragraph 2(c)'s defining investment as "less actual senior debt proceeds and any rental, trade-in, or other credits" whenever Neptune was required to release a lien on a trade-in machine. The Court finds that the jury could have reasonably rejected such a construction of Paragraph 2(c).

Additionally, the Court finds that the jury could have reasonably concluded that the funds left over after the purchase of the YMP computer comprised "user rents or sale proceeds" pursuant to Paragraph 2(c). Accordingly, the jury was entitled to conclude that MKT was entitled to a fifteen percent commission for the YMP transaction under Paragraph 2(c), as reflected in the $354,000 portion of the jury award.

The Court notes its duty to "consider the evidence in the light most favorable to the party against whom the motion was made and to give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence. The court cannot assess the weight of conflicting evidence ...." *Smith v. Lightning Bolt Productions, Inc.*, 861 F.2d 363, 367 (2d Cir.1988). There is not "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or ... such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at [the instant] verdict." *Song v. Ives Laboratories, Inc.*, 957 F.2d 1041, 1046 (2d Cir.1992) (internal quotations omitted). "[W]eakness of the evidence does not justify judgment as a matter of law ...." *Densberger v. United Technologies Corp.*, 125 F.Supp.2d 585, 590 (D.Conn.2000) (internal quotations omitted). Accordingly, this Court will not grant the motion for judgment as a matter of law as to the jury finding of the YMP transaction's profitability.

### 2. Profitability of the Pool of Computers

Neptune also argues that even assuming the XMP was properly included in the pool

analysis as a trade-in credit to be deducted from the cost of the YMP, the jury could not have reasonably found that the pool of Cray computers was profitable because the $3.5 million paid to Concord to release the lien on the XMP must be added back into the pool analysis as part of Neptune's "equipment costs" or "out of pocket" expenses under 2(c) of the Representation Agreement, thus eliminating the profit created by the YMP transaction. As noted earlier, the Court finds that the jury could have reasonably found that the lien release expenses were not "equipment cost" or "out of pocket expenses" associated with the YMP transaction pursuant to Paragraph 2(c) of the Representation Agreement. Neptune did not argue that the XMP lien release must be factored into the pool profitability equation other than as a part of the YMP transaction. Accordingly, the jury could have reasonably found the pool of computers to be profitable. Neptune's motion is thus denied as to this jury finding, and the Court declines to reject the jury's findings as to whether MKT was due a profit sharing commission on the YMP transaction.

### C. Sufficiency of Evidence as to Remarketing Commission on Cray Computers

■ Neptune also claims that the jury could not have reasonably found that MKT is entitled to the remarketing commission of $32,000 on six Cray computers repurchased by Cray in 1994 for $6.4 million, because MKT was no longer actively representing Neptune when the repurchase agreement was executed and implemented. MKT counters the jury could have reasonably found that it is entitled to the remarketing commission because Neptune materially breached the Representation Agreement, thereby excusing MKT from further performance under it.

In its counterclaim, MKT claimed that it terminated the Representation Agreement for two reasons: (1) Neptune's attendance at the November 1993 Cray meeting without MKT; and (2) Neptune's refusal to pay MKT's profit sharing invoice for the YMP

transaction. MKT contends that there was sufficient evidence upon which a reasonable jury could have found both of these claims proved. As this Court has already found that a reasonable jury could have concluded that a profit sharing commission was due, the Court finds that the jury could have reasonably concluded that MKT was justified in terminating the Representation Agreement, because Neptune was in material breach. Accordingly, the jury could have reasonably found that, because MKT had a valid basis for terminating the Representation Agreement, MKT had a right to the $32,000 remarketing commission, and Neptune's motion is denied as to this jury finding.

### D. Sufficiency of Evidence as to Breach of Covenant of Good Faith and Fair Dealing

■ Neptune contends that the jury could not have reasonably found that its refusal to pay MKT's claimed profit sharing commission for the YMP transaction and its attendance at the November 1993 meeting without MKT constituted bad faith. Neptune further contends that MKT's continued performance after the November 1993 meeting constituted a waiver of any bad faith claim arising out of that meeting.

As to the profit sharing commission, Neptune argues that, even if its interpretation was wrong as to whether the Representation Agreement called for a profit sharing commission on the YMP transaction, "[a]n error in interpreting a contract ... is not bad faith." *Labbe v. Hartford Pension Comm'n.,* 239 Conn. 168, 682 A.2d 490, 504 (1996). Accordingly, Neptune argues, its refusal to pay the commission cannot be a basis for the jury's finding of breach of covenant of good faith and fair dealing. The Court finds that Neptune's withholding of the commission was based on reliance on a permissible construction of that contract. No other evidence entitled the jury to conclude that Neptune's failure to pay MKT the profit sharing commission amounted to bad faith. Accordingly, the Court finds that the jury could not reasonably have found that Neptune's failure to

pay MKT the profit sharing commission was a breach of the covenant of good faith and fair dealing.

■ Neptune also argues that the jury could not have reasonably found that Neptune's exclusion of MKT from that meeting constituted bad faith. MKT contends that the jury could have reasonably found that Neptune's exclusion of MKT from the November 2, 1993 meeting was motivated by desire to prevent MKT from learning about the repurchase in order to avoid paying MKT the remarketing commission on the six Cray computers. Though the Court acknowledges the evidence that Neptune's exclusion of MKT from the meeting broke Neptune's earlier practice of including MKT at such meetings, the Court finds no evidence that supports MKT's contention that Neptune had intentionally and wilfully excluded MKT from the meeting in order to further Neptune's own interests and prevent certain topics from arising during the course of the meeting. Accordingly, the Court finds that the jury could not have reasonably found that Neptune breached its duty of good faith and fair dealing by excluding MKT from the November 2, 1993 meeting, and judgment as a matter of law is appropriate as to MKT's counterclaim of breach of the covenant of good faith and fair dealing.[5]

### E. Conclusion

In sum, the Court finds that the jury could have reasonably found that MKT was due a profit sharing commission of $354,000 on the YMP computer pursuant to Paragraph 2(c) of the Representation Agreement and that MKT was entitled to the remarketing commission of $32,000 on six Cray computers repurchased by Cray in 1994. On these issues, there was not a "complete absence of evidence supporting the verdict" or evidence so "overwhelming that reasonable and fair minded persons could only have reached the opposite result." *Hardy v. Saliva Diagnostic Systems, Inc.,* 52 F.Supp.2d 333, 339 (D.Conn.1999). Accordingly, Neptune's Motion for Judgment as a Matter of Law is DENIED as to these grounds. However,

---

**5.** The Court need not reach Neptune's assertion that MKT's continued performance after the No-

vember 1993 meeting constituted a waiver of any bad faith claim arising out of that meeting.

the Court finds that the jury could not have reasonably found that Neptune's actions amounted to a breach of the duty of good faith and fair dealing, and Neptune's motion is GRANTED as to this ground.

As noted earlier, the Court finds that the jury verdict of $386,000 represents an award for a Paragraph 2(c) profit sharing commission on the YMP and a Paragraph 2(b) remarketing commission for the Cray computers. Accordingly, to the extent Neptune's motion requests a remittur of the jury award, the motion is DENIED.

## III. MOTION FOR IMPOSITION OF STATUTORY INTEREST

■ Also pending is MKT's motion for imposition of statutory interest. On March 23, 2001, MKT filed its Fourth Amended Counterclaim to the Plaintiff's Fourth Amended Complaint. In that pleading, MKT included a request for statutory prejudgment interest. Neptune argues that MKT's Motion for Interest should be denied because the issue of prejudgment interest is a jury question, and MKT should have requested that the issue be submitted to the jury.

Pursuant to Conn. Gen.Stat. § 37–3a, MKT may seek to recover interest at the rate of ten percent a year as damages for the detention of money after it becomes payable. *See* Conn. Gen.Stat. § 37–3a. As such interest is an element of MKT's damages, "the determination of whether interest pursuant to § 37–3a should be awarded is a question for the trier of fact." *Foley v. Huntington Co.*, 42 Conn.App. 712, 682 A.2d 1026, 1042 (1996); *see also Winnick v. Alvin & Co., Inc.*, No. 3:95CV0415 (WWE), 1998 WL 696015, at *1 (D.Conn. July, 15 1998) ("The allowance of prejudgment interest as an element of damages is governed by C.G.S.A. § 37–3a and is primarily an equitable determination that must be made by the trier of fact ....."). In the instant case, MKT did not request to submit its claim for interest pursuant to Conn. Gen.Stat. § 37–3a to the trier of fact. MKT did not submit a requested charge on, or a request for an award of, such prejudg-

ment interest.[6] As well, the jury did not indicate that prejudgment interest should apply to the damage award. *See Brandewiede v. Emery Worldwide, a CF Company*, 890 F.Supp. 79 (D.Conn.1994) (trial court reviewed issue of prejudgment interest when jury verdict indicated that interest should apply to damage award though jury charge did not instruct jury to award prejudgment interest). Accordingly, as the decision to include such interest as part of MKT's award lay properly with the trier of fact, MKT's motion for imposition of prejudgment interest is hereby DENIED.

## IV. CONCLUSION

For the foregoing reasons, Neptune's Rule 50 Motion [Document # 366] is GRANTED in part and DENIED in part, and MKT's Motion for Imposition of Statutory Interest [Document # 371] is DENIED.

---

6. MKT does not argue that it filed requests to charge or a proposed jury instruction on this issue.