**HERMÈS INTERNATIONAL, et al., Plaintiffs–Appellants,**

v.

**LEDERER DE PARIS FIFTH AVENUE, INC. and Artbag Creations, Inc., Defendants–Appellees.**

**Docket Nos. 99–9283(L), 99–9365(XAP)**

United States Court of Appeals, Second Circuit.

Argued: May 5, 2000

Decided: July 10, 2000

Christopher Landau, Kirkland & Ellis, Washington, DC, for Plaintiffs–Appellants–Cross–Appellees.

Anthony H. Handal, Handal & Morofsky, Norwalk, Connecticut, for Defendants–Appellees–Cross–Appellants.

Before: MESKILL, CABRANES, Circuit Judges, TELESCA, District Judge.*

TELESCA, Senior United States District Judge:

Appellants Hermès International, Hermès Sellier, Hermès Gestion, Inc., and Hermès of Paris, Inc., (collectively referred to as "Hermès"), appeal an Order of final judgment entered by the United States District Court for the Southern District of New York (Scheindlin, J.) granting summary judgment in favor of appellees Lederer de Paris Fifth Avenue, Inc. ("Lederer"), and Artbag Creations, Inc. ("Artbag"). *See Hermès Int'l v. Lederer De Paris Fifth Ave., Inc.,* 50 F.Supp.2d 212 (S.D.N.Y.1999). Hermès, which brought this trademark and trade dress infringement action against Lederer and Artbag seeking monetary and injunctive relief, claims that the district court erred in granting appellees' motions for summary judgment with respect to Hermès' claim for injunctive relief, and erred in

---

* The Honorable Michael A. Telesca, United States District Court for the Western District of New York, sitting by designation.

fully granting Artbag's motion for summary judgment with respect to Hermès' monetary damages claims. Hermès argues on appeal that the district court erroneously held that the doctrine of laches barred Hermès' claim for injunctive relief against both defendants and for monetary relief against defendant Artbag with respect to certain allegedly infringing products. Appellees cross-appeal claiming that the district court erred in determining that Hermès had not abandoned its right to enforce the trademarks and trade dress at issue and in accordingly denying their motions for summary judgment. Appellees also claim on cross-appeal that the district court erred in denying their motions for attorneys' fees.

For the reasons set forth below, we affirm the district court's denial of appellees' motions for attorneys' fees, and deny appellees' cross-appeal on the issue of abandonment on grounds that the order appealed from is not a final order, and thus is not appealable. We find, however, that the district court erred in applying the doctrine of laches to appellants' claim for injunctive relief, and applied the doctrine too broadly with respect to appellants' claim for damages. Accordingly, we remand this case for further proceedings consistent with this opinion.

### BACKGROUND

Appellant Hermès is a manufacturer and retailer of high-quality handbags and other fashion accessories. According to Hermès, its products incorporate a number of distinctive design characteristics that constitute its "famous mark and trade dress." Hermès, 50 F.Supp.2d at 215. Detailed descriptions of these items are found in the district court's opinion. See id. at 215–16.

Appellees Lederer and Artbag sell replicas of various Hermès products such as the "Kelly Bag," a handcrafted purse with an average selling price of over $5,000, with some models selling for over $30,000. Id. at 215 n. 4. Some of the knockoff bags sold by Lederer sell for as much as $27,000.00. Id. at 218.

According to the record, Hermès knew that Lederer and Artbag had been selling copies of Kelly bags since at least 1979 and 1989 respectively. Id. at 223. Hermès claimed, however, that it did not become fully aware of the scope of the appellees' alleged infringement until 1996, when it began investigating Lederer and Artbag's sales of knockoff Hermès products. According to Hermès, its investigation revealed that Lederer and Artbag were selling entire lines of knockoff Hermès products. In 1998, upon completion of its investigation, Hermès brought suit against the appellees pursuant to Section 32 of the Lanham Act of 1946, 15 U.S.C. § 1114; Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); New York General Business Law § 360–1; and New York common law seeking monetary and injunctive relief for the alleged violation of its trademarks and trade dress.

Appellees moved for summary judgment against Hermès on grounds that Hermès had abandoned its trademark and trade dress rights, or, in the alternative, that Hermès was estopped from obtaining relief under the doctrine of laches. The district court held that appellees had not met their burden of proving that Hermès had abandoned its trademarks or trade dress, and accordingly denied in part appellees' motions. Id. at 222. The district court found, however, that Hermès had unreasonably delayed bringing an infringement suit against Lederer and Artbag, and thus was barred by the doctrine of laches from obtaining monetary or injunctive relief against those companies. The district court determined that the delay of between 9 and 19 years in bringing suit against Lederer and Artbag was unreasonable and prejudiced the appellees. Accordingly, the district court granted appellees' motions for summary judgment with

respect to Hermès' claims for monetary damages and injunctive relief.

## DISCUSSION

### I. Summary Judgment Standard

A district court's grant of summary judgment is reviewed *de novo*. *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir.2000). Summary judgment is appropriate when there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir.2000) (citing *Fagan v. New York State Elec. & Gas Corp.*, 186 F.3d 127, 132 (2d Cir.1999)). All inferences are drawn in favor of the non-moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir.2000). Although the district court did not address whether or not Hermès' designs are protectable as trademarks or trade dress, in viewing the record in the light most favorable to the non-movant below, Hermès, this court presumes that the designs are protected.

### II. Laches

#### A. Injunctive Relief

■ In evaluating whether laches should bar Hermès request for injunctive relief, the district court began by noting that "the balance of the equities must be weighed, including an analysis of defendants' intent and the public interest." 50 F.Supp.2d at 225. The court then determined that because appellees Lederer and Artbag did not use the name "Hermès" on their products and because they openly acknowledged to customers that their products were Hermès copies, the appellees had not deceptively attempted to "pass off" or "palm off" their products as genuine Hermès. *Id.* However, the court also found that by explicitly informing their customers that the style and workmanship of the knock-offs were such that no third party observer would be able to tell they were not genuine Hermès bags,

the appellees had "attempt[ed] to encourage consumer confusion in the post-sale context." *Id.* The court went on to consider the public interest and concluded that, although the behavior of appellees Artbag and Lederer might have increased their companies' sales at the expense of Hermès, it did not harm the public in the post-sale context and therefore did not compel rejection of the laches defense. *Id.* at 225–26.

■ In so holding, the district court misapplied the law governing the doctrine of laches. It is well established that "laches is not a defense against injunctive relief when the defendant intended the infringement." *Harlequin Enters. Ltd. v. Gulf & W. Corp.*, 644 F.2d 946, 950 (2d Cir.1981); *see also Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 75 (2d Cir.1999)(quoting *Harlequin*). This good-faith component of the laches doctrine is part of the fundamental principle that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Thus, the appellees' intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense, not a mere factor to be weighed in balancing the equities, as the district court did in this case.

Viewing the record in a light most favorable to Hermès, it is clear that appellees Lederer and Artbag intentionally copied Hermès' designs and sought to sell knock-offs of Hermès originals. Appellees thus intentionally traded off the Hermès name and protected products and should not have been entitled to invoke the doctrine of laches as a defense against Hermès' claims for injunctive relief.

The district court's ruling that Hermès' claims should be barred by the doctrine of laches was based, in part, on the erroneous conclusion that the appellees' conduct did not create confusion among consumers or harm the public. Trademark laws exist to

protect the public from confusion. The creation of confusion in the post-sale context can be harmful in that if there are too many knockoffs in the market, sales of the originals may decline because the public is fearful that what they are purchasing may not be an original. Furthermore, the public may be deceived in the resale market if it requires expertise to distinguish between an original and a knockoff. Finally, the purchaser of an original is harmed by the widespread existence of knockoffs because the high value of originals, which derives in part from their scarcity, is lessened.

The Eleventh Circuit concisely summarized the theory behind protecting the public interest in trademark cases:

> It ... is important to recognize that the enforcement of trademark laws benefits consumers even in cases where there is no possibility that consumers will be defrauded. For, to the extent that trademarks provide a means for the public to distinguish between manufacturers, they also provide incentives for manufacturers to provide quality goods. Traffickers of these counterfeit goods, however, attract some customers who would otherwise purchase the authentic goods. Trademark holders' returns to their investments in quality are thereby reduced. This reduction in profits may cause trademark holders to decrease their investments in quality below what they would spend were there no counterfeit goods. This in turn harms those consumers who wish to purchase higher quality goods.

*United States v. Torkington,* 812 F.2d 1347, 1353 n. 6 (11th Cir.1987) (citation omitted).

Here, the district court erred in finding that no confusion resulted from appellees' conduct. Although the district court found no evidence of point-of-sale confusion, it failed to properly consider the issue of post-sale confusion. We have previously held that post-sale confusion can occur when a manufacturer of knockoff goods offers consumers a cheap knockoff copy of the original manufacturer's more expensive product, thus allowing a buyer to acquire the prestige of owning what appears to be the more expensive product. *Mastercrafters Clock & Radio Co. v. Vacheron & Constantin–Le Coultre Watches, Inc.,* 221 F.2d 464, 466 (2d Cir.1955). *See also Insty\*Bit, Inc. v. Poly–Tech Indus., Inc.,* 95 F.3d 663, 672 (8th Cir.1996); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.,* 998 F.2d 985, 989 (Fed.Cir.1993); *Polo Fashions, Inc. v. Craftex, Inc.,* 816 F.2d 145, 148 (4th Cir.1987). In *Mastercrafters,* we held that the practice of selling a knockoff wall clock at a cheaper price than the original created an actionable harm despite the fact that customers knew they were buying the knockoff because:

> At least some customers would buy [the copier's] cheaper clock for the purpose of acquiring the prestige gained by displaying what many visitors at the customers' homes would regard as a prestigious article. [The copier's] wrong thus consisted of the fact that such a visitor would be likely to assume that the clock was an Atmos clock.... [T]he likelihood of such confusion suffices to render [the copier's] conduct actionable.

*Id.* That is precisely what has occurred in this case. The district court, however, dismissed the importance of post-sale confusion by stating that:

> [w]hile defendants' exploitation of the possibility of post-sale confusion may increase their sales at the expense of Hermès, I am not convinced that defendants' activity harms the *public* in the post-sale context. While Hermès' potential high-end customers may be confused in the post-sale context, these highly sophisticated purchasers will not be confused at the point of sale.

50 F.Supp.2d at 226 (emphasis in original).

Such a practice does harm the public, however, by creating post-sale confusion, not just among high-end consumers, but among the general public, which may be-

lieve that the knockoff is actually the genuine article. In fact, high-end consumers may be less confused than the general public in the post-sale context because many of them will be aware of the existence of copies. In either case, a loss occurs when a sophisticated buyer purchases a knockoff and passes it off to the public as the genuine article, thereby confusing the viewing public and achieving the status of owning the genuine article at a knockoff price. Accordingly, we find that the district court erred in finding no harm to the public in the continued sale of knockoff goods by appellees.

### B. Monetary Relief

■ In holding that the doctrine of laches prevented Hermès from obtaining monetary relief against Artbag, the district court found that laches precluded recovery for seven different allegedly infringing products sold by Artbag. On appeal, Hermès claims that, with respect to Artbag, the laches defense should have applied to only one product, the Kelly bag, and should not have been applied to six other products. In support of this claim, Hermès argues that there is no evidence in the record to suggest that it knew that Artbag was selling knockoff copies of those six products, and thus as a matter of law Artbag could not meet its burden of proving that Hermès unreasonably delayed taking action against Artbag for selling allegedly infringing products.

It is clear from the record and the district court's opinion that Hermès knew of *Lederer's* sales of seven knockoff products for at least nine years prior to commencing suit, but that Hermès was aware of only one knockoff product being sold by Artbag—the Kelly bag. *See* 50 F.Supp.2d at 223 (chart). The district court, however, failed to distinguish between Lederer and Artbag in holding that laches prevented recovery against both companies for all seven products. Because there is no evidence that Hermès knew of Artbag's sales of knockoffs other than the Kelly bag prior

to 1996, we find that the district court's grant of summary judgment with regard to monetary relief against Artbag should have applied only to the Kelly bag.

### III. Abandonment

■ Appellees cross-appeal claiming that the district court improperly denied their motions for summary judgment with respect to their claim that Hermès abandoned its trademark and trade dress rights by not vigorously enforcing those rights. Appellees claimed that as a result of Hermès' failure to police its marks, its marks and trade dress became generic, and therefore unprotectable. Before considering the merits of this cross-appeal, we examine whether or not the appeal is properly before us.

■ Generally, there is no right of appeal from the denial of a motion for summary judgment. "Orders denying summary judgment are interlocutory in nature. Because they are not 'final,' they are not ordinarily appealable." *Pahuta v. Massey–Ferguson, Inc.,* 170 F.3d 125, 131 (2d Cir.1999) (citations omitted). Moreover, while a party may appeal from the denial of a motion for summary judgment where final judgment has been entered without an intervening trial on the merits, *see id.* at 131–32 (citing *U.S. v. 228 Acres of Land and Dwelling Located on Whites Hill Road,* 916 F.2d 808, 811 (2nd Cir. 1990), *cert. denied,* 498 U.S.1091, 111 S.Ct. 972, 112 L.Ed.2d 1058 (1991)), such cases involve appeals by parties who did not receive the relief requested at the trial court level. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (only a party aggrieved by a judgment or order of a district court may exercise a statutory right to appeal therefrom) (citations omitted). In the instant case, defendant-appellees were granted relief by the district court— namely, summary judgment based on laches on Hermès' request for monetary and injunctive relief with regard to sales of the Kelly, Constance, Trim, Evelyne, Bugatti,

and Birkin handbags, and the H-belt. Accordingly, appellees are not entitled to a cross-appeal from the denial of their motion for summary judgment with respect to their abandonment claims.

■ The court, may, however, consider appellees' arguments as additional argument in defense of the district court's judgment. An appellee "may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court...." *United States v. American Ry. Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 68 L.Ed. 1087 (1924). Considering appellees' contentions as arguments in support of the judgment of the district court, we find that the appellees were not entitled to motions for summary judgment on the issue of abandonment.

■ Appellees claimed below that Hermès abandoned its marks by failing to police infringement of those marks, and thus allowed the marks to become generic and unenforceable in an action for infringement. To establish the defense of abandonment, it is necessary to show either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark. *See Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1059 (2d Cir.1985), *cert. denied*, 474 U.S. 844, 106 S.Ct. 131, 88 L.Ed.2d 108 (1985). The district court held that in establishing the latter, appellees would be required to set forth a "highly factual analysis of consumer perception and identification of the Hermès designs." 50 F.Supp.2d at 222. In denying appellees' motions, the district court found that appellees had "simply not met their burden of proof in showing that Hermès designs are in the public domain and no longer identify Hermès as their source." *Id.* at 222. We agree that appellees failed to establish that they were entitled to summary judgment on the basis of the defense of abandonment. The district

court noted that with the exception of the Kelly bag, the appellees had submitted no significant evidence that the Hermès' designs had become generic. *Id.* at 221. With respect to the Kelly bag, the district court determined that Lederer and Artbag had failed to meet the burden of establishing that Hermès had, in fact, abandoned its marks. *Id.* at 222.

The record supports the district court's conclusions. Far from establishing that Hermès' designs have become generic, the evidence below suggests that Hermès' designs continue to indicate their source, and that Hermès vigorously pursued manufacturers of knockoff goods in an effort to protect its mark. *Id.* at 221–22. The district court also noted that "[t]he best evidence that Hermès' products indicate their source may, in fact, be defendants' own direct copying." *Id.* at 221 (citing *T. Anthony Ltd. v. Louis Vuiton Malletier*, 30 U.S.P.Q.2d 1214, 217 (S.D.N.Y.1993) (evidence that mark is copied widely actually acts as persuasive evidence that the mark has become distinctive as a source-identifier) (additional citations omitted)). We find the district court's determination that the appellees failed to establish the defense of abandonment to be sound, and reject appellees' arguments that the district court should have granted their motions for summary judgment.

## IV. Attorneys' fees

Appellees cross-appeal the district court's denial of their motions for attorneys' fees. In patent and trademark cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Because appellees should not have prevailed on their motion, this issue is moot, and the cross-appeal is denied.

## CONCLUSION

The district court's grant of summary judgment for injunctive relief in favor of appellees, and for monetary relief for

products other than the Kelly bag in favor of Artbag is REVERSED. The district court's denial of appellees' motions for attorneys' fees is AFFIRMED, and the case is REMANDED for further proceedings consistent with this opinion.