George PAYNE, Plaintiff,

v.

State of CONNECTICUT, DEPARTMENT OF TRANSPORTATION, Defendant.

No. CIV.A.3–01–CV–1096JCH.

United States District Court,
D. Connecticut.

June 11, 2003.

Joseph A. Moniz, Moniz, Cooper & McCann, Hartford, CT, for plaintiff.

Edward F. Osswalt, Jane B. Emons, Attorney General's Office, Hartford, CT, for defendant.

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 21]

HALL, District Judge.

The plaintiff, George Payne ("Payne"), brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII") against the State of Connecticut Department of Transportation ("DOT"). Payne alleges that the defen-

dant violated Title VII when it denied him a promotion on the basis of his race, age and gender. Payne is an African–American male, and was 49 years old at the time he was denied the promotion. The defendant has moved for summary judgment.

## I. BACKGROUND

In 1969 Payne began working for the DOT as an engineer's aide. In August of 1999, Payne was the Supervising District Service Agent for District I of the DOT. Throughout his thirty years of work for the DOT, Payne received favorable to excellent reviews and evaluations.

On August 4, 1999, Payne applied for the position of Transportation Special Service Section Manager ("Section Manager"); the position had recently become available upon the death of the former manager. The position was posted and, on the listing, under the heading "Summary of Duties," it stated: "In the Office of Maintenance and Highway Operations this class is accountable for supervising engineers and technicians in the investigation and inspection of permits, traffic and drainage issues and coordinating District Maintenance training programs in the District 1 Maintenance Office." Pl's Mem. in Opp'n to Mot. for Summ. J. [Dkt. No. 28] Ex. A. Under "General Experience," the posting stated that the position required:

> One (1) year of lead and/or supervisory experience involving the planning, inspection and/or administration of highway maintenance projects.
>
> Note: For state employees lead and/or supervisory experience is interpreted at the level of Transportation Supervising District Service Agent, Transportation Supervising Maintenance Planner, Transportation Maintenance Planner 3 or Transportation Engineer 3 in charge of the District traffic or drainage function.

*Id.* The posting further stated that, as a "Special Requirement," incumbents in the class may be required to possess appropriate current licenses or permits. *Id.*

Interested employees were required to submit a completed application for examination, and those meeting the minimum qualifications for the positions were required to undergo an interview before a three member selection panel. The panel consisted of the Transportation Maintenance Director, a white male who was also Payne's current supervisor; a Personnel Officer, a white female; and an Affirmative Action Officer, an Asian male. A total of twelve employees, including Payne, met the minimum qualifications and were interviewed by the Selection Committee. The panel recommended Robbin Cabelus ("Cabelus"), a white female, for the position, and the DOT accepted the Selection Committee's recommendation.

On or about January 27, 2000, Payne filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging race, age and gender discrimination based upon DOT's failure to promote him to the Section Manager position. After an investigation and fact finding proceeding, the CHRO dismissed Payne's complaint on October 29, 2000.

## II. DISCUSSION

■ Summary judgment is only appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Hermes Int'l v. Lederer de Paris Fifth Ave. Inc.*, 219 F.3d 104, 107 (2nd Cir.2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 133 (2d Cir. 2000) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223

(2d Cir.1994)). However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)) (alteration in original and internal quotations omitted). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo*, 22 F.3d at 1223–24.

In assessing the record to determine if genuine issues of material fact exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 721 (2d Cir.1994). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. When reasonable persons, applying the proper legal standards, could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

■ Payne claims that DOT denied him promotion because of his race in violation of Title VII of the Civil Rights Act of 1964. Although "[s]ummary judgment is sparingly used where intent and state of mind are at issue," *Graham*, 230 F.3d at 38, "[i]t is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239

F.3d 456, 466 (2d Cir.2001). In order to survive a motion for summary judgment on his Title VII claim, Payne "must come forward with at least some credible evidence that the actions of [the defendant] were motivated by racial animus." *Grillo v. New York City Transit Authority*, 291 F.3d 231, 234 (2d Cir.2002). Because Payne alleges that the DOT acted with discriminatory intent or motive, the case is governed by the burden shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

### A. *Prima Facie* Case

■ The initial burden in a Title VII claim is on the plaintiff to establish a *prima facie* case of discrimination. To do so, the plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). DOT argues that Payne has failed to establish a prima facie case because he cannot show that he was the most qualified candidate for the Section Manager position, and the record discloses no irregularities in the DOT's process.

■ Establishment of a prima facie case is not, however, an onerous burden. *Byrnie v. Town of Cromwell, Board of Education*, 243 F.3d 93, 102 (2d Cir.2001) ("The burden upon the plaintiff to prove a prima facie case is minimal.") In this case, Payne has established a prima facie case. First, he is African–American and is, therefore, a member of a protected class. Second, the denial of the promotion caused Payne to suffer an adverse employment action through the loss of increased pay.

*Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir.2000). Third, DOT admits that Payne met the minimum experience and training requirements which enabled him to apply for the position of section manager. Answer [Dkt. No. 18] ¶ 7. The fact that he possessed the basic skills necessary for the job of section manager is sufficient to satisfy the third element of a prima facie case under Title VII. *de la Cruz v. New York City Human Resources Admin.*, 82 F.3d 16, 20 (2d Cir.1996) (to satisfy prima facie test of qualifications, plaintiff "need only demonstrate that he possesses the basic skills necessary for performance of the job"). And, fourth, a white female employee was hired in the position of section manager, and all Section Manager positions within DOT are filled by Caucasians. Thus the circumstances under which Payne was denied promotion gives rise to an inference of discrimination. *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir.2001) ("the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis."). The court therefore finds that Payne has established a *prima facie* case of discrimination regarding his denial of promotion.

## B. Legitimate, Non–Discriminatory Reason

■ Once a plaintiff has established a *prima facie* case, a rebuttable presumption of discrimination arises and the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "The defendant's burden of production also is not a demanding one; [it] need only offer such an explanation for the employment decision."

*Bickerstaff v. Vassar College*, 196 F.3d 435, 446 (2d Cir.1999).

■ As a basis for denying Payne the promotion, DOT asserts that he did not score well in his interview. Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. No. 23] at 3. Interview questions were prepared before the interview, and were designed to test the applicant's basic knowledge and understanding of the areas of responsibility of section manager. *Id.* The Selection Committee scored and ranked each applicant based on their responses to the interview questions. *Id.* Whereas Payne was said to have done poorly in the interview, DOT argues that Cabelus "excelled at the Selection Committee's interview." *Id.* at 9.

DOT also argues that Cabelus had qualifications superior to those of Payne. Def.'s Local 9(c)(1) Statement [Dkt. No. 22] ¶¶ 17, 19, 20. DOT cites to the fact that Cabelus had a college degree in civil engineering, whereas Payne had only a high school diploma and one year of business courses at Greater Hartford Community College. Def.'s Mot. for Summ. J. [Dkt. No. 23] at 4. DOT further argues that, in her previous position, Cabelus supervised more people than Payne, and that Payne did not respond well to the Selection Committee's questions at his interview. *Id.* The court finds that DOT's articulation of its reason for denying Payne's promotion meets the burden of offering a legitimate, non-discriminatory reason for the employment decision.

## C. Pretext

■ Once a defendant offers a legitimate, non-discriminatory reason for its actions, the burden shifts back to the plaintiff to fulfill his ultimate burden of proving that the defendant intentionally discriminated against him in the employment decision. *Reeves v. Sanderson Plumbing*

*Products, Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). In order to satisfy this burden, the plaintiff may attempt to prove that the legitimate, nondiscriminatory reason offered by the defendant was not the employer's true reason but was a pretext for discrimination. *Id.* As the Supreme Court explained in *Reeves*:

Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.... Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.

530 U.S. at 147, 120 S.Ct. 2097 (citations omitted). Evidence that an employer's reason is false, combined with the evidence presented to establish a *prima facie* case, in some cases, can be enough to sustain a plaintiff's burden, and a plaintiff need not have independent evidence of discrimination. *Id.; see also Zimmermann v. Associates First Capital Corp.*, 251 F.3d at 381–82.

However, there are some instances where such a showing will be insufficient to sustain a finding of liability. One such instance is where "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that

no discrimination had occurred." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097.

■ The Second Circuit has, following *Reeves*, advocated a case-specific approach to determining whether evidence of the falsity of a defendant's reason and a *prima facie* case were enough to support a finding of discrimination. *Zimmermann, supra.* A finder of fact may consider the strength of the *prima facie* case, the probative value of the proof that the defendant's reason is pretextual, and any other evidence presented in the case when determining if the plaintiff has sustained his burden. *Id.* The Second Circuit has cautioned that when determining if there is a triable issue of material fact "[i]t is not the province of the court itself to decide what inferences should be drawn, ... if there is any evidence in the record for any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Howley v. Stratford*, 217 F.3d 141, 151 (2d Cir. 2000). In this case, Payne has established a record sufficient to support an inference that the adverse employment action was pretextual.

■ DOT argues that Cabelus was picked for the Section Manager position over Payne because she performed better during her interview. "The Selection Committee recommended Cabelus as the successful candidate based solely on her performance at the interview." Aff. Edward Marcos [Dkt. No. 25] ¶ 15. While courts have found that "[t]here is nothing unlawful about an employer's [sic] basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview," *see Byrnie*, 243 F.3d at 104 (citation omitted), in this case, a juror could find that the reasons proffered by DOT were pretextual. Edward J. Marcos, one of the Selection Committee members, stated in his affidavit that, "[p]rior to

interviewing the first candidate, the Selection Committee was provided with a set of questions prepared by Victor LaBarre which were to be asked of all candidates." Aff. Edward Marcos [Dkt. No. 25] ¶ 8. Despite this contention however, the record reflects that Cabelus may not have been asked the last three interview questions, whereas Payne was required to answer all of the questions on the interview list. *See* Aff. Margo S. Kilborn [Dkt. No. 24] Ex. 2.

DOT also argues that "[a]t the interview, plaintiff's answers to certain questions were rated only as fair or poor ...." Def.'s Mem. in Supp. of Mot. for Summ. J. [Dkt. No. 28] at 9. Marcos, one of Payne's interviewers, stated in his affidavit that "George Payne ... did not perform well in the interview and did not demonstrate knowledge within the specialized areas pertinent to the position of Section Manager." Aff. Edward Marcos [Dkt. No. 25] ¶ 14. Marcos' interview review sheet reflects this characterization. In the notes section of the review sheet it states that Payne was "not familiar" with respect to questions one through three on the interview list. *Id.*

DOT's argument is undermined, however, by the interview review notes of the other two Selection Committee members, Victor LaBarre and Pamela Horan. Both LaBarre and Horan's notes are markedly different from those of Marcos, and neither of these individual submitted an affidavit either confirming or denying Marcos' claim. LaBarre's notes reflect that he found Payne had partial answers to questions one and two, and that his responses to question three was "good" and his response to question four was "v. good." *Id.* LaBarre's review sheet rates Payne's response to question five, including its three subparts, as being excellent. *Id.* Horan's interview review sheet noted that, in re-

sponse to question one, Payne had a "working knowledge of claims that come into the unit," that he was "aware of process," and that, with respect to question two, Horan wrote that Payne "has researched deeded right, familiar with adverse rights." *Id.* Given DOT's reliance on the subjective interview portion of Payne's application, and the disparate notes taken by each interviewer regarding Payne's responses, the court finds a material issue of fact as to the credibility of DOT with regard to its proffered legitimate reason for the adverse employment action. *Byrnie*, 243 F.3d at 105 (" '[w]hile the business judgment rule protects the sincere employer against second-guessing the reasonableness of its judgments, it does not protect the employer against attacks on its credibility." ') (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1048 (11th Cir.2000)).

In addition, while DOT argues that Cabelus possessed superior credential and experience, this court finds that an analysis of Payne's qualification compared to those of Cabelus is a material issue of fact. Payne argues that the paper qualifications of the two candidates reveals that Cabelus did not meet all of the minimum qualification for the position of Section Manager. Pl.'s Opp'n to Mot. for Summ. J. [Dkt. No. 28] at 12. Payne argues that Cabelus did not have "leave and/or supervisory experience" as defined by the DOT, and also lacked a commercial driver's license, which he possessed. *Id.* at 13. Margo Kilborn stated that the decision to "promote Ms. Cabelus over the plaintiff was based solely on Ms. Cabelus' superior qualification, experience and Selection Committee rating," Aff. Margo Kilborn [Dkt. No. 24] ¶ 17. While DOT cites to Cabelus' Bachelor of Science degree as one of the qualifications which made her a superior candidate to Payne, the job posting did not require such a degree, nor did it state a degree would substitute for experience. Pl.'s Mem. in

Opp'n to Mot. for Summ. J. [Dkt. No. 28] Ex. A. Further, Payne had received the rating of "excellent" in all categories during his annual evaluation which was conducted just prior to his applying for the Section Manager position. *See generally, Byrnie*, 243 F.3d at 105 (citing *Widoe v. Dist. # 111 Otoe County Sch.*, 147 F.3d 726, 730 (8th Cir.1998)). Victor LaBarre and Pamela Horan, both of whom sat on the Selection Committee, signed and approved this evaluation form. Pl.'s Opp'n to Mot. for Summ. J. [Dkt. No. 28] Ex. B. Moreover, in his deposition, Payne stated that Victor LaBarre told him before the Selection Committee interview that he had the Section Manager job. Aff. Edward Marcos [Dkt. No. 25] Excerpts from Payne Dep. at 63.

Although the court finds Payne's evidence as to discriminatory intent is thin,[1] the court does find that he has met his burden of establishing a material issue of fact as to DOT's intent. As the Supreme Court found in *Reeves*,

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'

*Reeves*, 530 U.S. at 147, 120 S.Ct. 2097. While such a showing will not "*always*" be adequate" to sustain a jury's finding of liability, in this case, Payne has sufficiently undermined DOT's credibility as to create a triable issue of fact. *Id.* at 148, 120 S.Ct.

2097 (emphasis original). In sum, the court finds that Payne has created a material issue of fact concerning the reason for his non-promotion.

## III. CONCLUSION

For the foregoing reasons, the court DENIES the defendant's motion for summary judgment [Dkt. No. 21].

**SO ORDERED.**

---

1. Payne cites to the fact that since 1969, all of the people selected for the position of District I Section Manager had been employees of the Maintenance Department and were white. Pl.'s Mem. in Opp'n to Mot. for Summ. J.

[Dkt. No. 28] at 10. Payne also notes that Cabelus was the first person promoted to Section Manager who came from a department other than maintenance.