No. 10-0383-cv
RBC Nice Bearings, Incorporated v. Peer Bearing Company

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 15th day of December, two thousand ten.

PRESENT:   GERARD E. LYNCH,
           DENNY CHIN,
                          *Circuit Judges*,
           EDWARD R. KORMAN,
                          *District Judge*.[*]

-----------------------------------------------------------------

RBC NICE BEARINGS, INC., ROLLER BEARING COMPANY OF AMERICA,
                          *Plaintiffs-Counter-Defendants-Appellants*,

                 v.                                       No. 10-0383-cv

PEER BEARING COMPANY,
                          *Defendant-Counter-Claimant-Appellee*.

-----------------------------------------------------------------

FOR APPELLANTS:        JOSEPH W. MARTINI (Aaron S. Bayer, *on the brief*),
                       Wiggin and Dana LLP, New Haven, Connecticut.

FOR APPELLEE:          THOMAS C. MCDONOUGH (James P. Muraff, Thomas E.
                       Williams, and Stephen Fedo, *on the brief*), Neal, Gerber &
                       Eisenberg, LLP, Chicago, Illinois.

---

[*] Honorable Edward R. Korman of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court is AFFIRMED.

Plaintiffs-counter-defendants-appellants RBC Nice Ball Bearing and Roller Ball Bearing Company of America (together, "Nice") appeal from that portion of an October 29, 2009 judgment of the United States District Court for the District of Connecticut (Bryant, *J.*) granting summary judgment on Nice's federal trademark claims to defendant-counter-claimant-appellee Peer Bearing Company ("Peer") on the basis of laches and dismissing Nice's related Connecticut state law claims as barred by the applicable statutes of limitations. We assume the parties' familiarity with the underlying facts and the procedural history of the case, which we reference only as necessary to explain our decision.

**DISCUSSION**

I. Trademark Claims

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the non-moving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003). Though this Circuit has not yet settled on the appropriate standard to review a grant of summary judgment based on laches, compare Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000) (applying de novo review), with Eppendorf Netheler Hinz GMBH v. Nat'l Sci. Supply Co.,

14 F. App'x 102, 105 (2d Cir. 2001) (applying abuse of discretion review), in this case the precise standard is immaterial: we reach the same conclusions as the district court and so we would affirm its decision regardless of the applicable standard.

Laches bars a claim for relief under federal trademark law where (1) the "plaintiff had knowledge of [the] defendant's use of its marks" and "inexcusably delayed in taking action," and (2) the "defendant will be prejudiced by permitting [the] plaintiff . . . to assert its rights at this time." Saratoga Vichy Spring Co. v. Lehman, 625 F.2d 1037, 1040 (2d Cir. 1980) (internal quotation marks omitted). The "burden of proving or rebutting the defense [of laches]" is determined by reference to "analogous [state] statutes of limitation." Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996) (internal quotation marks omitted). "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant" to demonstrate the applicability of the laches defense. Id. (internal quotation marks omitted). "On the other hand, when the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove the circumstances making it inequitable to apply laches to his case." Id. (internal quotation marks omitted). As the district court found, Connecticut's three-year statute of limitations for fraud determines which party has the burden of proving the applicability or inapplicability of the laches defense in this case. RBC Nice Bearings, Inc. v. Peer Bearing Co., 676 F. Supp. 2d 9, 25 (D. Conn. 2009); see also Argus Res. Group, Inc. v. Argus Media, Inc., 562 F. Supp. 2d 260, 273 (D. Conn. 2008), citing Conopco, 95 F.3d at 191. Nice filed its complaint on September 5, 2006 and so the pertinent date for laches purposes is September 5, 2003.

3

A.  Knowledge of Peer's Use of 1600 Series Designation

Nice's claims revolve around Peer's adoption of the same 1600 Series designation Nice had long used for its equivalent inch-based bearings.  The only reasonable inference that can be drawn from the record is that Nice should have known of Peer's allegedly infringing conduct – which began no later than 1961 – well before September 5, 2003.  Nice's argument that it was "at most . . . aware of Peer's sale of *equivalent* bearings . . . and not Peer's infringing sale of bearings actually using the 1600 SERIES trademark" misses the point. Actual knowledge of Peer's allegedly infringing conduct is not required: the applicable limitations period is triggered once Nice "should have known" about it.  ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 70 (2d Cir. 2002).  "[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry."  Johnston v. Standard Min. Co., 148 U.S. 360, 370 (1893); see also Polaroid Corp. v. Polarad Elecs. Corp., 182 F. Supp. 350, 356 (E.D.N.Y. 1960), aff'd, 287 F.2d 492 (1961).

By 2002, Nice was aware that some of its largest customers had begun sourcing their 1600 Series bearings from Peer instead.  (Indeed, Nice was aware of at least one such sale as early as 1997.)  Nice was also aware that Peer was marketing its products as equivalent to Nice's 1600 Series bearings.  Had Nice made even the most limited inquiry about its competition, as a reasonable business would have, it would easily have discovered Peer's catalogs, which for many years had openly advertised its 1600 Series bearings.  We conclude,

4

as did the district court, that any reasonable factfinder would be compelled to find that Nice should have known about Peer's allegedly infringing conduct well before September 5, 2003 and, as a result, the presumption of laches applies and the burden is on Nice to demonstrate its inapplicability to this case.

B.  Unreasonable Delay in Filing Suit

Nice offers no evidence to rebut the presumption of unreasonable delay and therefore its more than five-year delay before filing suit was unreasonable as a matter of law.

C.  Prejudice

Peer strengthens the presumption of prejudice in its favor by noting its continuous use of the 1600 Series designation for nearly half a century and the difficulties posed by defending this action after so many years have passed.  Not only have memories faded and documents been lost, but, as the district court found, many of the "individuals who would have knowledge regarding the issues relevant to this case are now dead," RBC Nice Bearings, Inc., 676 F. Supp. 2d at 27, including Robert Balderston, a Nice employee from 1940 until 1972 who participated in the naming of the 1600 Series and had intimate knowledge of Nice's trademark practices, and died in 2008.  Nice fails to adequately rebut this evidence or to raise a material issue of fact that would undermine the presumption of prejudice in this case.

D.  Bad Faith as a Bar to Raising Laches Defense

Nice argues that the district court erred in permitting Peer to raise laches as a defense. As Nice points out, Laches cannot be raised by "one tainted with inequitableness or bad faith

relative to the matter in which he seeks relief." Precision Instrument Mfg. Co v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). In the trademark context, bad faith requires a showing that the junior user "inten[ded] to promote confusion or exploit [the senior user's] good will or reputation." Star Indus., Inc. v. Bacardi & Co., 412 F.3d 373, 388 (2d Cir. 2005). As this Court stated in Hermes, the laches defense is inapplicable where the junior user "intentionally traded off the [senior user's] name and protected products." 219 F.3d at 107.

Nice cobbles together words and phrases from the deposition of Peer's founder, Laurence Spungen ("Spungen") – who made the decision to adopt the 1600 Series designation as Peer's own – that it believes show bad faith. Spungen testified that, in adopting the 1600 Series designation, he was aware that Nice was using the same designation and that customers "in some respect" associated Nice with 1600 Series bearings. He also admitted that Nice's use of the 1600 Series designation "had some influence" on his decision to adopt the same designation.

While Spungen's deposition demonstrates his knowledge of Nice's prior use of the mark, more than mere knowledge is required; to forestall the laches defense, there must be a finding of the infringer's intent "to promote confusion or exploit [plaintiff's] good will or reputation." Star Indus., 412 F.3d at 388. Nothing in the record contradicts Spungen's disavowal of such an intention, and much evidence corroborates it. For example, it is undisputed that Peer's catalogs and packaging always clearly and prominently labeled its bearings with Peer's corporate name and logos, which Nice does not claim are similar to its

6

own.  Moreover, "Spungen later testified that, at the time he adopted the 1600 Series designations, he did not believe that Nice bearings were good quality," which the district court concluded "belie[d] any inference that [he] wanted customers to confuse or otherwise associate his bearings with Nice bearings." RBC Nice Bearings, 676 F. Supp. 2d at 25-26. (In fact, it is undisputed that Peer's 1600 Series bearings met the applicable Annular Bearing Engineering Committee standard, while Nice's bearings did not.)  Furthermore, Nice does not contest Peer's evidence that the sophisticated purchasers who are both companies' customers independently test the quality of bearings they receive, so that the series number matters much less than whether the specific bearing purchased meets the customer's requirements.  On this record, no factfinder could conclude that Spungen adopted the 1600 Series designation in order to free-ride on Nice's reputation or confuse customers about the origin of his product.  Peer was therefore free to raise laches as a defense to Nice's claims of infringement.

II.  Connecticut State Law Claims

Nice alleges various state law causes of action predicated on the same factual assertions as its federal trademark claims.  While conceding that a three-year limitations period applies to these claims and that the limitations period accrues on the date of infringement, Nice insists that each allegedly infringing action creates a new three-year limitations period and so its claims are not time-barred insofar as they reference allegedly infringing actions taken by Peer within three years of Nice's 2006 complaint.

7

Nice fails to identify a single case applying Connecticut law in the manner it suggests to the causes of action at issue in this case. Nor could it. In a closely analogous case addressing a counterclaim alleging ongoing violations of the Connecticut Trademark Statute, fraud, unfair trade practices, tortious interference, and breach of contract, a Connecticut state court held that "to allow the defendants to now come forward and pursue these allegations . . . after knowing of the violations for almost a decade would violate the purpose of a statute of limitations, which 'is to prevent the unexpected enforcement of stale claims.'" S. Pope Inc. v. Pope Exterminating, No. 66712, 1993 WL 489708, at *3 (Conn. Super. Ct. Nov. 17, 1993), quoting Vilcinskas v. Sears, Roebuck & Co., 144 Conn. 170, 174-75 (1956); see also Argus Research Group, 562 F. Supp. 2d at 279-81; Roberto's, Inc. v. Mirafrore, No. CV 940312295S, 1996 WL 150379, at *2 (Conn. Super. Ct. Mar. 12, 1996). The same is certainly true here. Furthermore, under Connecticut law, "[t]he doctrine of laches applies where a trademark owner has ignored a known infringer of his mark for a considerable length of time." Roberto's, 1996 WL 150379, at *2, citing Polaroid, 287 F.2d at 492. But see P&S Contractors v. Tig HitCo, Inc., No. HHBCV085010760S, 2009 WL 1424612, at *5 n.9 (Conn. Super. Ct. Mar. 31, 2009) ("As for whether laches may be a defense . . . the law is unsettled."). We therefore affirm the district court's dismissal of Nice's state law claims as time-barred.

## CONCLUSION

We have considered all of Nice's remaining arguments and find them to be without merit.  Accordingly, the judgment of the district court is AFFIRMED.


FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court